# EXHIBIT 16

OCD #1L-03625-17
FDRB #2015-26

## POLICE DEPARTMENT
## CITY OF NEW YORK

August 2, 2017

From:      Chief of Department

To:        Police Commissioner

Subject:   **FINAL SUMMARY REPORT OF FIREARMS DISCHARGE REVIEW BOARD CASE # 2015-26**

    1.    On Saturday, April 25, 2015, at approximately 1337 hours, Detective Vicente Matias, tax# 901930, and Detective Harold Carter, tax# 905914 of the 26th Precinct Detective Squad, responded to East Village Halfway House, located at 538 East 6th Street New York, N.Y., Apartment 6C. This is a halfway house for ex-prisoners diagnosed with mental history, within the confines of the 9th Precinct. The detectives went to location to conduct a follow-up regarding an I-Card from a past robbery case, and intended to arrest Mr. David Felix. Upon arrival, Mr. Felix fled the apartment and Detectives apprehended him in the lobby. A violent struggle ensued and Mr. Felix began striking the detectives with a Department radio that he removed from Detective Matias. Detective Carter discharged his weapon one time, striking Mr. Felix in the chest causing his demise.

    2.    On July 25, 2017 the Firearms Discharge Review Board met to review, discuss and render findings and recommendations regarding FDRB case # 2015-26. The rotating Operational Bureau Chief on this Board was the Chief of Transportation, in conformance with Organizational Guide 101-23 "Boards and Committees".

    3.    The Board rendered these FINDINGS and RECOMMENDATIONS:

FINDINGS:

    **NO VIOLATION OF DEPARTMENT FIREARMS POLICY**

RECOMMENDATIONS:

    **RETRAINING: TACTICS (DETECTIVE CARTER IS RETIRED)**

**NARRATIVE**

4. On Saturday, April 25, 2015, at approximately 1337 hours, Detective Vicente Matias, tax# 901930, and Detective Harold Carter, tax# 905914 of the 26th Precinct Detective Squad, responded to East Village Halfway House, located at 538 East 6th Street New York, N.Y., Apartment 6C. This is a halfway house for ex-prisoners diagnosed with mental history, within the confines of the 9th Precinct. The detectives went to location to conduct a follow-up regarding an I-Card from a past robbery case, and intended to arrest Mr. David Felix. Upon arriving at 538 East 6th Street, the detectives met Ms. Danielle Steeley, a security officer for the building. Ms. Steeley escorted the detectives to Apartment 6C. As she opened the door, Mr. Felix, realizing it was detectives, ran to the window and fled down the fire escape. The detectives ran down the building stairwell. Both the detectives and Mr. Felix met in the rear courtyard of the building. Detectives Carter and Matias attempted to apprehend Mr. Felix, who began to resist arrest by refusing to be handcuffed and attempting to move away from grasp of the detectives. During the struggle, Mr. Felix was able to regain entry into the building.

Now inside the rear lobby area of the building, Detective Carter and Detective Matias continued to struggle to place handcuffs on Mr. Felix. The altercation escalated and both detectives received blunt force trauma injuries to the head and torso. As a result, Detective Carter discharged one round from his Department authorized Glock, model 26, striking Mr. Felix in the chest. Mr. Felix fell to the floor, which enabled the detectives to summon assistance from several passerby and via Division Radio. Emergency Medical Services was requested to the scene and the perpetrator was removed to Beth Israel Medical Center where he was pronounced DOA at 1438 hours. Both detectives were removed to Bellevue Hospital for treatment. Detective Carter was treated for a contusion to the back of the head, a laceration to the left scalp and a right shoulder strain. He was released after treatment. Detective Matias was treated for a laceration to the right side of the head, approximately 3 inches above the right ear; he also sustained right shoulder pain. Detective Matias was admitted to the hospital for observation. Mr. Felix was removed to Beth Israel Medical Hospital by Emergency Medical Services, where he was pronounced DOA at 1438 hours.

**INTERVIEWS**

5. One member of the service subject, and three members of the service witness were interviewed and their statements are provided below. Three additional members of the service witnesses were interviewed and their statements are consistent with those provided. One civilian witness was interviewed and their statement is provided below; three additional civilian witnesses were interviewed and their statements do not add anything of substance to the incident.

<u>MEMBER OF THE SERVICE SUBJECT</u>

**Detective Harold Carter,** tax# 905914, assigned the 26th Precinct Detective Squad stated that on April 25, 2015, he performed a 0800x1600 tour of duty in business attire. He stated that he and Detective Matias went to 538 East 6th Street, a homeless shelter, to apprehend a suspect, Mr. David Felix, who was wanted for Robbery. Detective Carter stated that he nor Detective Matias were equipped with less than lethal devices. He stated that upon arrival, he and Detective Matias were escorted to Mr. Felix's apartment on the 6th floor by a counselor. Once they gained entry to the apartment Detective Carter was alerted by Detective Matias that the suspect was running down the fire escape. Detective Carter stated that he ran down the building staircase to the

lobby floor and caught up to Mr. Felix. Detective Carter stated that he told Mr. Felix, "This is the police; you're under arrest," and turned Mr. Felix around and attempted to place handcuffs on Mr. Felix. He stated that Mr. Felix resisted and attempted to run for the main door. Detective Carter stated he prevented Mr. Felix from leaving the building by getting between Mr. Felix and the door.

    Detective Carter stated that he was able to pin Mr. Felix to the wall and told Mr. Felix to stop resisting. He stated that Mr. Felix then started to fight him and Detective Matias. Detective Carter stated that he tried to put over a 10-85 over the radio, but couldn't because Mr. Felix had ripped the antenna off the radio. Detective Carter stated that Mr. Felix was very strong and that even attempts to bring Mr. Felix down to the floor failed. He stated that during the struggle, Mr. Felix got ahold of Detective Matias' radio and used it to bludgeon him and Detective Carter numerous times. He stated that at this point he had blood in his right eye. Detective Carter stated that the struggle continued down the hallway where the counselor's office was located. He stated that he was feeling "weak and dizzy" and about to "go out of the picture" and could barely see anything because of blood going in to his right eye.

    Detective Carter stated that he looked over at Detective Matias and he looked like "he was about to pass out" as well. He stated that he "disengaged" himself from Mr. Felix by pushing him with his left arm and yelled "Police Don't Move!" He stated that he then drew his firearm with is right hand as he continued to give verbal commands "Police, Don't Move!" He stated that Mr. Felix advanced at him with the radio in his right hand to strike Detective Carter in the head. Detective Carter stated that he shot Mr. Felix one time, while holding his firearm in a two hand supported stance. Detective Carter stated that he then saw Mr. Felix fall backward. Detective Carter stated that he was "feeling dizzy" as he tried to put the antenna back on the radio and all for help, but saw that the radio wasn't working. He stated that he opened the main door and asked the people on the street to call for help. He described Mr. Felix as a male black, and about 5' 10" in height.

## MEMBER OF THE SERVICE WITNESSES

    **Police Officer Deryk Blair,** tax# 877316, stated that he was performing a 0705x1540 tour of duty in civilian attire, as the 9th Precinct assistant FIO with Sergeant John Hagan, tax# 933825. He stated that he responded to 538 East 6th Street in response to a radio transmission of a 10-13 "shots fired." Upon entering the building, he observed three males in the hallway. He stated that two males were dressed in suits and had blood coming from cuts on their heads. The third male was observed lying on the ground with blood coming from his chest. Officer Blair asked the two males in the suits fi they were okay, and one of the detectives responded by saying "look at me." He observed Detective Carter with a broken NYPD portable radio in his hand and Detective Matias with another portable radio in his hand. He observed that both detectives had blood coming from their heads. He observed that both detectives had their firearms secured in holsters on their person. He proceeded to take possession of both detectives' firearms and secured one Glock pistol in his back pocket and the other Glock was handed over and secured by Detective Hamilton. He stated that Detective Matias was unable to reach for his firearm on his right side so he had to retrieve it from the holster for him. He stated that both firearms were ultimately given to Sergeant Moncayo, upon the sergeant's arrival. He stated that he observed the male on the ground moving, but that he did not make any statements.

    **Sergeant Luis Moncayo,** tax# 942226, stated that he performed a 0655x1552 tour of duty in uniform, assigned as the 9th Precinct Patrol Supervisor, with Officer Eusibio as his

operator, in RMP# 5515. At approximately 1345 hours, he responded to a radio run of a signal 10-13, located at 538 East 6th Street. He stated that, upon his arrival, he entered the lobby and observed two males, later identified as Detective Carter and Detective Matias standing against the wall. He observed another male, later identified as the perpetrator, lying on the floor with blood on his shirt. He stated that both detectives were attired in suits and appeared to be "dazed." Sergeant Moncayo observed a police radio on the floor and a shield on one of the detectives. He stated that Police Officer Blair and Sergeant Hagan, assigned to the 9th Precinct, were also present on the scene. He stated that Detective Hamilton, assigned to the Chief of Patrol's office was also present, and handed him a Glock 26 firearm, which belonged to Detective Carter.

Sergeant Moncayo inspected that firearm and found nine rounds in the magazine and one round in the chamber. Additionally, Officer Blair handed him a 9mm Glock 19 belonging to Detective Matias. He also inspected that firearm and found 15 live rounds in the magazine and one round in the chamber. He stated that he rendered each firearm safe, secured them on his person, and later personally handed both firearms to Detective Jupiter, from the Crime Scene Unit.

**Detective Vincente Matias,** tax# 901930, 26th Detective Squad stated that on April 25, 2015, he performed a 0800x1630 tour of duty, performed in business attire. He stated that he and Detective Carter went over to 538 East 6th Street to look for a suspect, Mr. Felix a suspected wanted for a Robbery that occurred within the 26th Precinct. He stated that upon arrival, they were escorted to Mr. Felix's apartment by a security guard who had keys to the apartment. He stated that once the security guard gained entry to the apartment with her keys, he heard someone kicking the screen door. He stated that he entered the apartment and observed someone resembling Mr. Felix exit the apartment through the window, and run down the fire escape. He stated that he and Detective Carter took the building stairs to the ground floor where they caught up with Mr. Felix. He stated that he heard Detective Matias stated that they then attempted to put the handcuffs on Mr. Felix, but were met with resistance, and a struggle ensued.

Detective Matias stated somehow during the struggle, Mr. Felix obtained his Department radio and used it to deliver multiple "blows" to his head and to Detective Carter. Detective Matias stated that he recalls telling Detective Carter that he was about to "pass out" and at the same time saw that Detective Carter was physically exhausted as well. He stated that Detective Carter then stepped back and discharged his firearm once at Mr. Felix. He stated that he then picked up his radio and called for assistance. He stated that they were not equipped with any less than lethal equipment. Detective Matias stated that as a result of receiving blows to his head, he received two stitches. He stated that he now suffers from post trauma anxiety attacks in the middle of the night, blurry vision, headaches and loss of balance, and is under the care of a neurologist.

CIVILIAN WITNESSES

**Witness #3,** stated that she was visiting her friend who lives a few buildings away from the incident. She stated that sometime between 1330 hours and 1430 hours, they were walking eastbound, on the south side of 6th Street, from Avenue A. She heard a commotion coming from a lobby of a building that they were walking past. She stated that she was standing an arm's length from the front door, looking into the lobby and observed punches being thrown. She heard someone yell several times, "Get on to the ground!" She saw handcuffs, but was not sure who had them or where she saw them. She stated there was a male in a parked car who asked her if a man

and a woman were fighting. She told the male that there were three guys fighting. She stated that the male exited his auto, looked into the lobby, and tried to open the lobby door, which was locked.

Witness #3 stated that, at this point, the three males who were fighting went to the back of the hallway, then to the right and out of her sight. She stated that she observed two of the three males come back into her sight. She then stated that she observed two of the three males come back into her sight. She stated that one of the males, a tall male black wearing a white button down shirt, ran toward the lobby door. She stated that the male was standing two to three feet from the lobby door, and then turned around with his hands up. She stated one of the other males was about seven to eight feet away from the door and had a gun. She stated that he was holding a gun and she heard the gun go off. She stated that the gun was pointed in her direction and she then ran off. She stated that the male witness went into the street and called 911. She then stated that a male opened the lobby door and asked someone to call 911. She stated she can't give a description of the males other than a tall male black wearing a white button down shirt and two short males. She stated that the fight seemed to go on for a long time.

**REVIEW OF MATERIAL INCONSISTENCIES**

6. Not applicable

**ADDITIONAL INFORMATION**

7. The review of the video footage obtained from 538 East 6th Street revealed the following: At approximately 13:37:03 (13:45:15 as shown in the video, due to the video timestamp being inaccurate), Detective Carter and Detectives Matias enter 538 East 6th Street. At approximately 13:44:45 (13:52:57, as shown on the video), the detectives are seen trying to apprehend David Felix, who violently resisted arrest. The struggle continues down the hallway, out of camera view. At approximately 13:48:15 (13:56:27, as shown on the video), two female ear witnesses who are visible on camera on the sidewalk in front of the building get startled, possibly by the sound of the firearm discharge, and move away from the front of the building. Soon after, Sergeant Hagan and Officer Blair arrive on scene. Based on the video footage, the detectives struggled with the perpetrator for a minimum of three minutes and thirty seconds (13:44:45 – 13:48:15) before the firearm discharge. At no time during the physical altercation captured on the video, does Mr. Felix appear to submit to arrest or cease resisting arrest.

**ASSESSMENT OF TACTICS AND PROCEDURES**

8. In reviewing the tactics employed by the detectives it was determined that the detectives would have been prudent if they requested additional backup personnel, due to the violent criminal past and mental history of the perpetrator, prior to their interaction. However, the detectives were being assaulted by the perpetrator, with their department radio, and used the reasonable amount of force to stop the perpetrator from continuing his actions. The detectives verbally identified themselves and attempted to handcuff the perpetrator, but were met with resistance by the aggressive perpetrator resulting in his demise.

**LESS-LETHAL OPTIONS**

9. The detectives were not equipped with any less lethal devices.

## CONCLUSIONS

10.   Based on the Board's review and evaluation of FDRB case #2015-26, the Board FINDS and RECOMMENDS:

FINDINGS:

**NO VIOLATION OF DEPARTMENT FIREARMS POLICY**

RECOMMENDATIONS:

**RETRAINING: TACTICS (DETECTIVE CARTER IS RETIRED)**

11.   For your consideration.

*Carlos M. Gomez*
Chief of Department

**APPROVED**
AUG. 0 8 2017
JAMES P. O'NEILL
POLICE COMMISSIONER