# EXHIBIT 23




# Forensic Medical Consulting of NY, P.C.

Lone Thanning, M.D.,
F.C.A.P., FACFE, DABFM
Diplomate, Anatomic & Forensic Pathology

October 18, 2018

Luna Droubi, Esq.
Beldock, Levine & Hoffmann, L.L.P.
99 Park Avenue – PH/26th Floor
New York, NY 10016

                               Re: **Felix et al. vs. City of New York, et al.**
                                          **No.: 16-CV-5845 (AJN)**
                                                      **(S.D.N.Y.)**

## DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2):

Dear Ms. Droubi,

Pursuant to your request, I have examined the following materials:

### I. THE DATA AND OTHER INFORMATION CONSIDERED IN FORMING THE OPINIONS:

i. CD-Rom with:
    a) FDNY Pre-Hospital Care Report, (3 pages).
    b) Mount Sinai Beth Israel Medical Center Records, (19 pages).
    c) OCME Records, M.E. Case #: M-15-002563, including, (45 pages):
        1. Hospital Physician's Report to Medical Examiner
        2. Voluntary Hospital EMS-Provider's Report, (6 pages)
        3. Final Diagnoses
        4. Cause and Manner of Death Ruling
        5. Narrative Reports of External and Internal Examinations
        6. Forensic Toxicology Laboratory Report, Lab #: 1583/15
        7. Case Work Sheets
        8. Autopsy Examination Notes
        9. Body Diagrams
        10. Additional Autopsy Notes
        11. Forensic Toxicology Request Form
        12. Identification Forms, (M.E.)
        13. Daily Case Triage Checklist
        14. Police Identification of Body
        15. Supplemental Case Information
        16. Report by Missing Person's Squad
        17. Mortuary Release Form
        18. Notice of Death

**DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):**

      19. Case Notes
      20. Department of Homeland Securities U.S. Citizenship and Immigration Services Documents
      21. Application for Employment Authorization
      22. M15-2563 Digital Color Autopsy Photographs:
          2 ID Photographs
          9 Morgue Check Out Photographs
          166 Path-Autopsy Photographs
          13 Felix, David (0-12) Post-Mortem X-rays

ii. CD-Rom with:
    a) Complaint No. 16-CV-5845 Jury Trial, (23 pages)
    b) 1st Amended Complaint, (30 pages)
    c) Witness Melanie Wagner Handwritten Statement, (3 pages)
    d) Path-Autopsy Photographs, (314 photographs)
    e) Path Evidence Photographs, (33 photographs)

iii. Complaint follow up # 3
iv. Police Department, City of New York Final summary report of Firearms Discharge. Review Board Case #: 2015-26; (6 pages)
v. Deposition Transcript of Defendant Witness, Shooting Officer, Detective Harold Carter, taken on 05/23/2018; (142 pages)
vi. Sketches of Incident Location
vii. Carter Grand Jury Testimony, pages 1421-1467; (46 pages)
viii. Interview with Responding Paramedics
ix. Shooting Timeline, (28 pages)

**IIa. BASIS AND REASONS FOR OPINIONS:**

Based upon all of the above, as well as my background, education, training and experience as a Board Certified Diplomate of Anatomic Pathology, Forensic Pathology, Forensic Examination and Forensic Medicine; and, furthermore, as former Chair and Chair Emeritus of the American Board of Forensic Medicine, Faculty Director and Associate Professor of Forensic Examination, Touro College School of Health Sciences, Assistant and Deputy Medical Examiner; Recently Retired Chief Medical Examiner of Rockland County Office of the Chief Medical Examiner; Currently a Police Surgeon Life Fellow and Advisory Board Member of the International Society of Police Surgeons, Distinguished Lecturer of Law, Jacob D. Fuchsberg School of Law, and President of Forensic Medical Consulting of NY, P.C.; I have arrived at the following:

Re: Felix et al. vs. City of New York, et al.
No.: 16-CV-5845 (AJN)
(S.D.N.Y.)

## DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):

### IIb. CASE SUMMARY:

On 04/25/2015 at 14:14 hours, Mr. David Felix arrived at Mount Sinai Beth Israel Emergency Department after sustaining a single gunshot wound in the right chest. The then 24 year old, African-American, male was brought in by ambulance and treated prior to arrival with CPR by EMS.

His condition was in progressive decline, with "severe intensity". He arrived apneic (without breathing), pulseless and intubated (in the field). Volunteer Hospital EMS were called 20 minutes prior to the 14:14 hours Emergency Department arrival, (13:54 hours), which was 12 minutes after EMS found him pulseless in the field at 14:08 hours, (second responders). The FDNY first responders were at patient's side at 13:55 hours, (see below for further details).

The gunshot wound (GSW) was in the anterior right, parasternal chest area. Immediate, bilateral needle thoracostomy was performed and bilateral chest tubes inserted, producing a moderate amount of blood and blood clot on the right side. A brief episode of bradycardia with thread pulse evolved and so a full thoracotomy was attempted. This peri-mortem thoracotomy, upon examination, revealed a small amount of blood in the pericardium along with a 5 cm laceration of the right atrium (fore-chamber). There was no heart contraction noted (on direct inspection); hence, CPR was stopped and Mr. Felix pronounced expired at 14:38 hours on 04/25/2015.

### AUTOPSY FINDINGS:

The 5 feet and 10 inches, average-framed, 168 pound, dark-skinned, black man displayed a single petecchia in the left eye, lower, palpebral conjunctiva. A ¼ inch, mucosal hemorrhage was of the midline upper lip. Multiple minor scars were of the face, torso and extremities.

*The gunshot wound of entrance* was measured 20 ½ inches from the top of the head, ¾ inch right of midline. The circular, 3/8 inch, perforation had an asymmetrical 1/16 inch abrasion margin in the 6-1 o'clock position. An associated circumferential, red skin discoloration extends up to a 1 inch radius from the center of the wound track. No fouling or stippling was seen of the skin. The submitted white T-shirt has a dark rim of black residue around the clothing perforation, consistent with "bullet wipe". A gray tank top was also brought in by Police. Apparent stippling I noted on the white T-shirt was not described by the Medical Examiner.

**The wound trajectory was from skin > soft tissues > thoracic cavity > costo/chondral junction, right ribs 5-6 > right antero > lateral pericardial sac > right atrium > inferior**

3

Re: Felix et al. vs. City of New York, et al.
No.: 16-CV-5845 (AJN)
(S.D.N.Y.)

## DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):

**vena cava > tip of right middle lung lobe > right lower lung lobe; exiting the chest cavity through right 10th intercostal space (i.c. 10-11).** The bullet then lodged in superficial muscle, right of the midline in the back, 21 inches from the top of the head.

No powder residue was visible along the wound track. Lungs are partially collapsed. Hemorrhage and tissue destruction line the wound path. Each pleural cavity held 20 cc of unclotted blood.

On the right back, a bullet was palpable under the skin. It was located in the right latissimus dorsi muscle, 21 inches from the top of the head, 1 ¾ inches to the right of the midline of the body/back. **The trajectory was from front > back, slightly downward and slightly left to right.**

The copper jacketed, gray metal, medium caliber bullet showed mushroom deformation, (submitted to evidence). The bullet is visualized in several of the post-mortem x-rays.

*Minor Blunt (Acute) Impacts* were of the face, lateral eye brow edge laceration, ¼ inch with trailing, interrupted abrasion. 1 x ¾ inch, red-purple contusion was noted of the right temple. The left neck crease had a diagonal, linear interrupted ½ inch abrasion. A right, supraorbital ridge, ¾ inch scalp hemorrhage was noted.

For a description of minor blunt force extremity injuries, see Autopsy External Examination Narrative Report.

*Pre-existing Medical Conditions:* Unraveled at autopsy were "stress ulcers" of the stomach mucosa, with multiple superficial, up to 1/8 inch ulcers.

*The Forensic Toxicology Laboratory Report* was **Negative** for alcohol, prescription medications and the most common, illicit substances of abuse.

According to the **Missing Persons Squad Report**, at the Manhattan OCME, (Office of Chief Medical Examiner), Mr. Felix was wanted for assault and robbery of a woman's purse. Detectives attempted to arrest him, but he reportedly resisted arrest and assaulted the Officers. He was subsequently shot once in the chest with a handgun.

The incident occurred at Mr. Felix's home address, 538 East 6th Street. Another address (possibly the father's) listed in the Identification Forms and PCR-Report FDNY is: 555 Broome

## DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):

Street, # 5 Floor, New York, NY 10013. The former building address is a supportive housing unit for individuals with mental health issues. Mr. Felix fled from his apartment through a window onto a fire escape, but the height off the ground forced him to re-enter the building and tried to exit through the lobby where he encountered NYPD. A physical altercation and the shooting took place in the lobby. Detective Davis informed the M.E., D.A. and NYPD that Internal Affairs would have information about the Officer(s) involved in the shooting.

The Medical Examiner listed the Cause and Manner of Death:

*Ia. Immediate Cause:*   **Gunshot Wound of Torso.**

*Manner of Death:*   **Homicide. (Shot by Police).**

I agree with this certification.

### PRE-HOSPITAL CARE REPORTS CHRONOLOGY:

*The Volunteer Hospital EMS provider* was called at 13:55 hours; en route at 14:00 hours; and on scene at 14:05 hours.

*The FDNY Pre-Hospital Care Report Summary* listed: call received at 13:48:58; dispatched at 13:49:19; en route at 13:51:37; on scene at 13:54:06; and patient contact at 13:55:00.

### PHOTOGRAPHS:

*CD-Rom Disc # 1:*
*Path Autopsy photographs 54 + 55* show most clearly the GSW of Entrance. It appears to be a distance shot; no soot or stippling is evident. A slightly burned abrasion rim is nearly circumferential. Discreet blow back from the temporary gas cavity may explain the wide circumferential ecchymosis surrounding the GSW of entrance. No muzzle imprint/stamp is visible. No powder burns/soot are noted.

*Note: The long-sleeved, white, T-shirt which was Mr. Felix's outermost garment, shows apparent stippling surrounding the bullet entrance. This was not described by the Medical Examiner.*

Re: Felix et al. vs. City of New York, et al.
No.: 16-CV-5845 (AJN)
(S.D.N.Y.)

**DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):**

***Post-Mortem X-rays, 13 in total, show:*** No bony fractures of:
- Right forearm and hand/wrist
- Skull and facial bones
- Feet, ankles, lower legs
- Left forearm, hand/wrist
- Left upper arm (humerus), shoulder, left ribs
- Pelvic/femur bones
- Cervical spine/clavicle
- Knees, lower femur and shin bones

- ✓ Mushroom-deformed bullet slug seen in post-mortem x-rays #'s: 9, 10 and 11
- ✓ Bony fractures of right ribs 5-6; costo-chondral junction, anteriorly are noted; consistent with GSW entrance

***CD-Rom Disc # 2:***

1 & 2: Complaint and 1st Amended Complaint: Mr. Felix had a history of Paranoid Schizophrenia.
3. Witness Melanie Wagner's 04/25/15 Statement: "The man in the white, long-sleeved T-shirt (his back) closest to me had his hands up at this point (the second man had a gun pointing my way)".
4. Path Autopsy 314 photographs & Path Evidence 33 photographs: I have seen only up to # 180 (cannot open the entire disc – possibly damaged):

The back of the right wrist and hand show moderate to marked soft tissue hemorrhage up to 4 inches above the wrist. Otherwise, the hand show minimal cuts and scrapes only. The fingernails have been clipped, (for Evidence Analysis).

### III. OPINIONS TO BE RENDERED:

### INJURY ANALYSIS:

The nearly, completely, perfectly horizontal, straight-on, front-to-back trajectory of the bullet path through Mr. Felix's chest suggests the hand gun was carefully pointed and aimed directly at Mr. Felix in a well-considered, unobstructed fashion and in a face-to-face stance. (This is



**DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):**

consistent with Defendant, Detective Carter's Grand Jury Testimony, page 493: "I discharged a round firing center mass".

The absence of powder burns, *[\*stippling]*, and muzzle stamp in the outermost layer of clothing and on the surface of the skin speaks for a distance shot from a minimum of 4-5 feet away (for a typical police hand gun, i.e. 9 mm, semi-automatic pistol, (in this case a Glock 26); or a 38+ caliber revolver). *[\*]- The apparent, wide scattered stippling documented in the Evidence Photographs, however, if confirmed, by direct examination of the garment brings the shot into the intermediary range (within 4-5 feet distance).* Either way, this distance supports the gun was fired deliberately, not accidentally, or haphazardly; such as during the course of a struggle. The presence of subcutaneous, circumferential (ecchymotic) hemorrhage of up to 1 inch from the center of the gunshot defect speaks to "subcutaneous gas effect", from the expansion of the temporary gas cavity traveling with the bullet causing temporary cavitation under the skin. "Bullet wipe" was described on the white T-shirt. This evidence does not assist in the evaluation of the distance of the shot as the bullet grease travels firmly adherent/adhered to the bullet slug at any range of distance. According to the 04/25/15 dated Eyewitness Statement of Ms. Melanie Wagner, Mr. Felix had put his hand(s) up in the air when the gun was pointed and fired at the center of the front of his chest as he was in an apparent "surrender stance". Per his Grand Jury Testimony, page 497, Detective Carter testified Mr. Felix hit him or his partner again **after** being shot. Page 521: Detective Carter: "He was right in front of me".

**CONSCIOUS PAIN AND SUFFERING:**

***Pre-Impact Terror/Fear of Impending Death:*** The face-to-face stance between the shooting Officer, Detective Carter, and Mr. Felix, having the gun pointed straight "center mass" at him; (Detective Carter testifying at his Deposition: "he was right in front of me, page 521), provides foundation that Mr. Felix did experience "Pre-Impact Terror/Fear of Impending Death" at least for some seconds.

***Post-Impact Conscious Pain and Suffering:*** Is proven in the Medical Examiner's wound tract description of the bullet's path as it traveled through Mr. Felix's chest. Multiple organs were traumatized including:
1. Skin
2. Ribs 5-6, right, involving bone and cartilage
3. Heart and vena cava
4. Middle and lower lung lobes, right with partial collapse
5. Muscle/soft tissue

## DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):

The most painful of these injuries were the rib fractures and the most immediately crippling injuries were those involving the heart and lung. While bony fractures involving ribs which move with each and every breath, are the source of excruciating physical pain, the collapsing lungs filling up with blood would have caused a feeling of "drowning" in his own fluids, an indescribably fearful, anxiety-producing state of mind.

The time frame of Mr. Felix's post-traumatic consciousness after being shot is estimated as follows:

A. Detective Carter testified Mr. Felix hit him or his partner again, **after** being shot.

B. The time lapse from the first 911 call received 13:48:58 to approximately 13:49 hours and first FDNY responder contact with Mr. Felix at 13:55 hours was 6 minutes. At that time, CPR was started with intubation on bag valve mask with oxygen. According to NYPD timeline, Eyewitness, Steven Pellegrino, heard a gunshot at 13:48:39 hours.

Base on the anatomical evidence, the physiological (bodily) mechanism of Mr. Felix's unconsciousness and demise was **Exsanguination** from the gunshot wound trajectory through the heart, (right atrium [forechamber] and inferior vena cava, combined with **Asphyxiation** from lung collapse and extraneous pressure on the outside of the lungs by liquid and clotted hemothoraces, chest hemorrhages, (status post peri-mortem thoracotomy).

A brief period of resuscitative success with bradycardia with thread (weak) pulse in the Emergency Department at or after 14:14 hours provides supportive evidence to the rate of exsanguination and asphyxiation being fairly slow, commensurate with low pressure venous bleeding from the right atrium and vena cava. This lends credence to Mr. Felix's conscious survival period being close to the approximate 6 minute timeframe between the first 911 call and loss of vital signs to below shock levels where unconsciousness and coma set in.

All opinions are stated to a reasonable degree of medical certainty. Testimony in circumstances and further information presented to me before or at trial, and including my response to posed hypothetical theories might provide greater latitude in my rendering further opinions.

Re: Felix et al. vs. City of New York, et al.
No.: 16-CV-5845 (AJN)
(S.D.N.Y.)

## DISCLOSURE OF EXPERT TESTIMONY PURSUANT TO FEDERAL RULES OF PROCEDURE RULE 26 (a) (2) (CONT.):

IV. **EXHIBITS TO BE USED AS A SUMMARY OF OR SUPPORT FOR OPINIONS:**

To be determined.

V. **QUALIFICATIONS, INCLUDING A LIST OF ALL PUBLICATIONS AUTHORED BY ME WITHIN THE PRECEDING 10 (TEN) YEARS: SEE ATTACHED CURRICULUM VITAE.**

VI. **THE COMPENSATION TO BE PAID FOR THE STUDY AND TESTIMONY: SEE ATTACHED FEE SCHEDULE.**

VII. **A LISTING OF ANY OTHER CASES I TESTIFIED AS AN EXPERT AT TRIAL OR BY DEPOSITION WITHIN THE PRECEDING 4 (FOUR) YEARS: SEE ATTACHED LISTING.**

Respectfully Submitted,

LONE THANNING, M.D., F.C.A.P.,
FACFE, DABFM
FORENSIC PATHOLOGIST

LT:dg
PC18-05-1433