# EXHIBIT 29



# PATROL GUIDE

| Section: Aided Cases | Procedure No: 216-05 |
|---|---|
| **MENTALLY ILL OR EMOTIONALLY DISTURBED PERSONS** | |
| DATE ISSUED: 01/01/2000 | DATE EFFECTIVE: 01/01/2000 | REVISION NUMBER: | PAGE: 1 of 6 |

**PURPOSE**  
To safeguard a mentally ill or emotionally disturbed person who does not voluntarily seek medical assistance.

**SCOPE**  
The primary duty of all members of the service is to preserve human life. The safety of ALL persons involved is paramount in cases involving emotionally disturbed persons. If such person is dangerous to himself or others, necessary force may be used to prevent serious physical injury or death. Physical force will be used ONLY to the extent necessary to restrain the subject until delivered to a hospital or detention facility. Deadly physical force will be used ONLY as a last resort to protect the life of the uniformed member of the service assigned or any other person present. <u>If the emotionally disturbed person is armed or violent, no attempt will be made to take the EDP into custody without the specific direction of a supervisor unless there is an immediate threat of physical harm to the EDP or others are present.</u> If an EDP is not immediately dangerous, the person should be contained until assistance arrives. If the EDP is unarmed, not violent and willing to leave voluntarily, uniformed member of the service may take such person into custody. When there is time to negotiate, all the time necessary to ensure the safety of all individuals will be used.

**DEFINITIONS**  
EMOTIONALLY DISTURBED PERSON (EDP) - A person who appears to be mentally ill or temporarily deranged and is conducting himself in a manner which a police officer reasonably believes is likely to result in serious injury to himself or others.

ZONE OF SAFETY - The distance to be maintained between the EDP and the responding member(s) of the service. This distance should be greater than the effective range of the weapon (other than a firearm), and it may vary with each situation (e.g., type of weapon possessed, condition of EDP, surrounding area, etc.). A minimum distance of twenty (20) feet is recommended. An attempt will be made to maintain the "zone of safety" if the EDP does <u>not</u> remain stationary.

**PROCEDURE**  
When a uniformed member of the service reasonably believes that a person who is apparently mentally ill or emotionally disturbed, <u>must</u> be taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others:

**UNIFORMED MEMBER OF THE SERVICE**

1. Upon arrival at scene, assess situation as to threat of immediate serious physical injury to EDP, other persons present, or members of the service. Take cover, utilize protective shield if available and request additional personnel, if necessary.
   a. If emotionally disturbed person's actions constitute <u>immediate</u> threat of serious physical injury or death to himself or others:
      (1) Take reasonable measures to terminate or prevent such behavior. Deadly physical force will be used <u>only</u> as a last resort to protect the life of persons or officers present.

NEW • YORK • CITY • POLICE • DEPARTMENT



DEF 12953

NOTE — *Damaging of property would not necessarily constitute an immediate threat of serious physical injury or death.*

**UNIFORMED MEMBER OF THE SERVICE** (continued)

b. If EDP is unarmed, not violent and is willing to leave voluntarily:
(1) EDP may be taken into custody without the specific direction of a supervisor.
c. In all other cases, if EDP's actions do not constitute an immediate threat of serious physical injury or death to himself or others:
(1) Attempt to isolate and contain the EDP while maintaining a zone of safety until arrival of patrol supervisor and Emergency Service Unit personnel.
(2) Do not attempt to take EDP into custody without the specific direction of a supervisor.

2. Request ambulance, if one has not already been dispatched.
a. Ascertain if patrol supervisor is responding, and, if not, request response.

NOTE — *Communications Section will automatically direct the patrol supervisor and Emergency Service Unit to respond to scene in such cases. Patrol supervisors' vehicles are equipped with non-lethal devices to assist in the containment and control of EDP's, and will be used at the supervisor's direction, if necessary.*

3. Establish police lines.
4. Take EDP into custody if EDP is unarmed, not violent and willing to leave voluntarily.

**PATROL SUPERVISOR**

5. Verify that Emergency Service Unit is responding, if required.
a. Cancel response of Emergency Service Unit if services not required.
6. Direct uniformed members of the service to take EDP into custody if unarmed, not violent, and willing to leave voluntarily.

NOTE — *When aided is safeguarded and restrained comply with steps 25 to 32 inclusive.*

WHEN AIDED IS ISOLATED/CONTAINED BUT WILL NOT LEAVE VOLUNTARILY:

**PATROL SUPERVISOR**

7. Establish firearms control.
a. Direct members concerned not to use their firearms or use any other deadly physical force unless their lives or the life of another is in imminent danger.
8. Deploy protective devices (shields, etc.).
a. Employ non-lethal devices to ensure the safety of all present (see "*ADDITIONAL DATA*" statement).
9. Comply with provisions of *P.G. 212-38, "Hostage/Barricaded Person(s),"* where appropriate.
10. Establish police lines if not already done.

NEW • YORK • CITY • POLICE • DEPARTMENT

DEF 12954

**PATROL SUPERVISOR (continued)**

11. Request response of hostage negotiation team and coordinator through Communications Section.
12. Notify desk officer that hostage negotiation team and coordinator have been notified and request response of precinct commander/duty captain.
13. Request Emergency Service Unit on scene to have supervisor respond.
14. If necessary, request assistance of:
    a. Interpreter, if language barrier
    b. Subject's family or friends
    c. Local clergyman
    d. Prominent local citizen
    e. Any public or private agency deemed appropriate for possible assistance.

**NOTE**

*The highest ranking uniformed police supervisor at the scene is in command and will coordinate police operations. If the mentally ill or EDP is contained and is believed to be armed or violent but due to containment poses no immediate threat of danger to any person, no additional action will be taken without the authorization of the commanding officer or duty captain at the scene.*

**EMERGENCY SERVICE UNIT SUPERVISOR**

15. Report to and confer with ranking patrol supervisor on scene.
    a. If there is no patrol supervisor present, request response forthwith, and perform duties of patrol supervisor pending his/her arrival.

**NOTE**

*The presence of a supervisor from any other police agency does not preclude the required response of the patrol supervisor.*

16. Evaluate the need and ensure that sufficient Emergency Service Unit personnel and equipment are present at the scene to deal with the situation.
17. Verify that hostage negotiation team and coordinator are responding, when necessary.
18. Devise plans and tactics to deal with the situation, after conferral with ranking patrol supervisor on scene.

**DESK OFFICER**

19. Verify that precinct commander/duty captain has been notified and is responding.
20. Notify Operations Unit and patrol borough command of facts.

**COMMANDING OFFICER/ DUTY CAPTAIN**

21. Assume command, including firearms control.
22. Confer with ranking Emergency Service Unit supervisor on scene and develop plans and tactics to be utilized.
23. Direct whatever further action is necessary, including use of negotiators.
24. Direct use of alternate means of restraint, if appropriate, according to circumstances (O.C. Spray, tear gas, baton, restraining equipment, taser electronic stun device, or stun device).

DEF 12955

**UNIFORMED MEMBER OF THE SERVICE**

<u>WHEN PERSON HAS BEEN RESTRAINED:</u>

25. Remove property that is dangerous to life or will aid escape.
26. Have person removed to hospital in ambulance.
    a. Restraining equipment including handcuffs may be used if patient is violent, resists, or upon direction of a physician examiner.
    b. If unable to transport with reasonable restraint, ambulance attendant or doctor will request special ambulance.
    c. When possible, a female patient being transported should be accompanied by another female or by an adult member of her immediate family.
27. Ride in body of ambulance with patient.
    a. At least two (2) uniformed members of the service will safeguard if more than one (1) patient is being transported.

**NOTE**

*If an ambulance is <u>NOT</u> available and the situation warrants, transport the EDP to the hospital by RMP if able to do so with reasonable restraint, at the direction of a supervisor. UNDER NO CIRCUMSTANCES WILL AN EDP BE TRANSPORTED TO A POLICE FACILITY.*

28. Inform examining physician, upon arrival at hospital, of use of non-lethal restraining devices, if applicable.
29. Safeguard patient at hospital until examined by psychiatrist.
    a. When entering psychiatric ward of hospital, unload revolver at Firearm Safety Station, if available (see *P.G. 216-07, "Firearms Safety Stations At Psychiatric Wards And Admitting Areas"*).
30. Inform psychiatrist of circumstances which brought patient into police custody:
    a. Inform relieving uniformed member of circumstances if safeguarding extends beyond expiration of tour.
    b. Relieving uniformed member will inform psychiatrist of details.
31. Enter details in **ACTIVITY LOG (PD112-145)** and prepare **AIDED REPORT WORKSHEET (PD304-152b)**.
    a. Indicate on **AIDED REPORT WORKSHEET**, name of psychiatrist.
32. Deliver **AIDED REPORT WORKSHEET** to desk officer.

**ADDITIONAL DATA**

*Prior to interviewing a patient confined to a facility of the Department of Hospitals, a uniformed member of the service must obtain permission from the hospital administrator who will ascertain if the patient is mentally competent to give statement.*

*Refer persons who voluntarily seek psychiatric treatment to proper facility.*

*Uniformed members of the service will comply with this procedure upon direction of the Commissioner of Mental Health, Mental Retardation and Alcoholism Services or his/her designee.*

DEF 12956

**ADDITIONAL DATA** (continued)

Upon receipt of a request from a qualified psychiatrist, or from a director of a general hospital or his/her designee, uniformed members of the service shall take into custody and transport an apparently mentally ill or emotionally disturbed person from a facility licensed or operated by the Office of Mental Health which does not have an inpatient psychiatric service, or from a general hospital which does not have an inpatient psychiatric service, to a hospital approved under Section 9.39 of the Mental Hygiene Law.

Patrol supervisors or uniformed members of the service assigned to Emergency Service Unit may utilize a taser electronic stun device or stun device to assist in restraining EDP's, if necessary. The taser/stun device may be used:

a. To restrain an EDP who is evincing behavior that might result in physical injury to himself or others, OR
b. To restrain person(s) whom, through the use of drugs, alcohol or other mind-altering substances, are evincing behavior that might result in physical injury to himself or others.

Emergency Service Unit personnel will obtain the permission of the Emergency Service Unit supervisor prior to utilizing a taser/stun device, except in emergencies.

Patrol supervisor or Emergency Service Unit personnel using a taser/stun device will prepare a TASER/STUN DEVICE REPORT (PD304-150). It will be signed by the Emergency Service Unit supervisor/duty captain, as appropriate, and delivered to the precinct of occurrence.

The precinct commander/duty captain will conduct an investigation, prepare an UNUSUAL OCCURRENCE REPORT (PD370-152), attach a TASER/STUN DEVICE REPORT, and forward as per instructions on the TASER/STUN DEVICE REPORT form.

The Commanding Officer, Emergency Service Unit will have taser/stun device logs maintained in a bound book.

NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD320-150) will be prepared whenever restraining devices, such as a taser, stun gun, water canon, Velcro restraining straps, five (5) foot shield, four (4) foot shield, shepherd's crook or rescue equipment (sledge hammer, wrecking bar, come-along winch, etc.) are used by uniformed members of the service in the performance of duty.

NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT will be prepared in addition to any other Department report required by the incident, including the TASER/STUN DEVICE REPORT.

The Commanding Officer, Investigation Review Section, will collate statistical information recorded on the REPORTS, and will forward a monthly report to the Office of the Chief of Department by the seventh (7th) business day of each month.

**RELATED PROCEDURES**

Aided Cases - General Procedure (P.G.216-01)
Mental Health Removal Orders (P.G. 216-06)
Unusual Occurrence Reports (P.G. 212-09)
Investigation Of Carjackings (P.G. 207-32)
Unlawful Evictions (P.G. 214-12)
Hostage/Barricaded Person(s) (P.G. 212-38)

DEF 12957

| | |
|---|---|
| *FORMS AND REPORTS* | *ACTIVITY LOG (PD112-145)* |
| | *AIDED REPORT WORKSHEET (PD304-152b)* |
| | *NON-LETHAL RESTRAINING DEVICE/RESCUE EQUIPMENT REPORT (PD320-150)* |
| | *TASER/STUN DEVICE REPORT (PD304-150)* |
| | *UNUSUAL OCCURRENCE REPORT (PD370-152)* |