# EXHIBIT 35

Expert Witness Report
Grace Telesco, Ph.D.

October 28, 2019

Beldock Levine & Hoffman LLP
99 Park Ave., PH/26th Floor
New York, NY 10016
Attn: Luna Droubi

Dear Ms. Droubi,

Pursuant to your request, I submit my expert report in the case *Felix et al. v. City of New York et al.* If I am provided with additional materials, my opinions may be supplemented based on the receipt of such materials.

## I.     QUALIFICATIONS

My name is Dr. Grace Telesco, and I am a Retired Lieutenant who spent twenty years in the NYPD and retired at the rank of Special Assignment Lieutenant. During my tenure with the NYPD Police Academy, I was assigned as the Chairperson/Commanding Officer-Lieutenant by the Chief of Personnel. From May 1998 to May 2001, I was directly responsible for the supervision, scheduling, and professional development of fifty (50) police instructors and the development of the Behavioral Science Curriculum taught to all entry level police recruits, consisting of four tracks of learning; Effective Communication and Cultural Competence, Ethics and Mental Health, Crisis Intervention, and Service Role. Major subject areas included Police Response to Mental Illness and Crisis Intervention.

I possess a Ph.D. in Social Work from Fordham University with a specialization in Mental Health, a Masters in Criminal Justice from John Jay College of Criminal Justice, and a Bachelor of Science in Police Science from John Jay College of Criminal Justice. I graduated from the NYC Police Academy completing entry level training and completed over 100 in-service trainings provided by the NYPD and other police related trainings, including NOVA Crisis Intervention Training from the National Organization of Victim Assistance. I am a diplomate in the American Academy of Experts in Traumatic Stress and a Professor of Criminal Justice at Nova Southeastern University. From 1985 to 1993, I was assigned as a NYPD Police Academy Social Science Department/Behavioral Science Department Instructor, Curriculum & Seminar Coordinator and held the ranks of Police Officer and Sergeant.

During my tenure as Chairperson of the Behavioral Science Department at the New York Police Academy and as a Seminar Coordinator from the periods of 1985 to 1993, I personally worked on the lesson plans, EDP workshop, and video content for the lessons related to Police Response to Mental Illness and Crisis Intervention.

I have served as a Police Expert on Police Handling of Persons with Mental Illness in the capacity as a Police Lieutenant for the Manhattan District Attorney's Office for Grand Jury testimony, and for Corporation Counsel in a Federal Civil Rights trial involving the shooting of an EDP. I have also been deposed and testified for Corporation Counsel as a consultant/police expert in my retirement.

Based on my extensive educational background in Mental Health and my direct professional experience with the NYPD Police Training, as it relates to Police Response to Mental Illness and Crisis Intervention, I can attest to acceptable police practices, procedures, protocols, safety rules and standards of care regarding the handling of Emotionally Disturbed Persons (or "EDP's", as they are referred to in the NYPD vernacular). All conclusions and opinions here are based on these acceptable police practices, procedures, protocols, safety rules and standards of care regarding the handling of EDPs. I am being compensated at a rate of $175.00 per hour. My C.V. is attached herein as **Exhibit 1**.

## II. THE DATA AND OTHER INFORMATION CONSIDERED IN FORMING THE OPINIONS:

First Amended Complaint
City's Monell Discovery Documents;
    Detective Carter History of Training DEF 12400-12411
    Felix Monell Discovery Responses Document
    Felix Training Materials from 2008 – 2014 DEF 3184-DEF 6022
    Felix Training Materials from 2015 – Present. DEF 9694-12399
    Felix Pls First Set of Monell Discovery Demands
Deposition Transcript of Detective Harold Carter
Deposition Transcript of Detective Vicente Matias
Deposition Transcript of Christina Ibanez
Deposition Transcript of Danielle Steeley
Deposition Transcript of Maritza Bryson
Deposition Transcript of Melanie Wagner
Deposition Transcript of Chief Theresa Tobin
Documents from Defendants re: Investigation
    9th Pct Det Squad File DEF 1 – DEF 758
    GO 15 transcripts/files of Det Matias and Det Carter
    Carter Grand Jury DEF 1421-1467
    Matias Grand Jury DEF 1468 – 1525
    Steeley Grand Jury pp. 158-193
    IAB Callout File 1429986195219 -911 call
    IAB Callout File 1429986236948 10-13
    IAB Callout File 1430011193926801 (Video)
    IAB Callout File 14300226844209 (Video)
    All documents pertaining to Defendants Investigation (including medical records and IAB callout files)
    Firearms Discharge Review Board Findings

Deft Reply MOL
Judge's Order on MTD
OIG Report
Empirical Academic Literature on Police Use of Force and Handling of People with Mental Illness:

Abby L. Mulay, Beth Vayshenker, Michelle L. West & Elspeth Kelly (2016) Crisis Intervention Training and Implicit Stigma Toward Mental Illness: Reducing Bias Among Criminal Justice Personnel, International Journal of Forensic Mental Health, 15:4, 369-381, DOI: 10.1080/14999013.2016.1208308

Augustin, D., & Fagan, T. J. (2011). Roles for mental health professionals in critical law enforcement incidents: An overview. Psychological Services, 8(3), 166.

Compton, M. T., Neubert, B. N. D., Broussard, B., McGriff, J. A., Morgan, R., & Oliva, J. R. (2011). Use of force preferences and perceived effectiveness of actions among Crisis Intervention Team (CIT) police officers and non-CIT officers in an escalating psychiatric crisis involving a subject with schizophrenia. Schizophrenia Bulletin, 37(4), 737–745.

Dupont, R., Cochran, S., & Pillsbury, S. (2007). Crisis Intervention Team core elements. The University of Memphis, School of Urban Affairs and Public Policy, Department of Criminology and Criminal Justice, CIT Center.

Hanafi, S., Bahora, M., Demir, B. N., & Compton, M. T. (2008). Incorporating crisis intervention team (CIT) knowledge and skills into the daily work of police officers: A focus group study. Community Mental Health Journal, 44(6), 427–432.

PERF. (2012). An integrated approach to de-escalation and minimizing use of force(Critical Issues in Policing). Washington, DC: Police Executive Research Forum.

PERF. (2015). Re-engineering training on police use of force (Critical Issues in Policing). Police Executive Research Forum

President's Task Force on 21st Century Policing. (2015). Final Report of the President's Task Force on 21st Century Policing. Washington, DC: Office of Community Oriented Policing Services.

Sanow, E. (2006). Crisis Intervention Team. Law and Order, 54(12).

Steadman, H., Deane, M. W., & Borum, R. (2000). Comparing outcomes of major models of police responses to mental health emergencies. Psychiatric Services, 51, 645–649.

Teller, J. L., Munetz, M. R., Gil, K. M., & Ritter, C. (2006). Crisis intervention team training for police officers responding to mental disturbance calls. Psychiatric Services, 57(2), 232–237.

Young, A. T., & Brumley, N. (2009). On-scene mental health services: Establishing a crisis team. FBI Law Enforcement Bulletin, 78(9), 6–11.

## III.   NYPD TRAINING ON HANDLING MENTALLY ILL PERSONS

According to the training material submitted by the City of New York, "on average NYPD patrol officers are dispatched to reports of EDPs almost 200 times per day. Officers encounter individuals in emotional distress while patrolling their posts, or when they **are told about such individuals** by people in their precinct." (*See* Policing the Emotionally Disturbed at DEF5234.)  Given the frequency with which officers in the NYPD encounter individuals with mental health issues, it is vital that a police force the size of the NYPD adequate train officers to deal with individuals who have such problems.

The current NYPD policy on the treatment of EDPs can be found in Patrol Guide § 216-05. The one in existence at the time of the incident involving Mr. Felix was Patrol Guide § 221-13. As the City itself has conceded, these policies have not changed in any substantive way for over 30 years. (*See generally* Tobin Dep.) In these policies, the NYPD provides that the officers are not to escalate situations; that they should attempt to isolate and contain the individual and to create a "zone of safety"; and they should reach out to their supervisors for assistance in handling any situation where the person of interest might be in the midst of a mental health crisis. These policies as they are written are, in my opinion, valid and adequate. However, these policies are only effective if the NYPD maintains a robust training regimen to ensure that officers, not just in the Police Academy, but as they go through their careers, are aware of the departmental policies regarding the treatment of individuals who may be in mental health crisis. As the history of the officers in this case illustrate quite graphically, the NYPD utterly fails to train its officers post-Academy in how to adequately handle persons with emotional or mental health issues.

Trainings can be broken down into trainings for new officers and trainings for existing officers. In my opinion, in the case of the NYPD, both have proven to be inadequate.

### A.  Trainings of New Officers

The training materials that were in existence in 2015 for new officers remained wholly inadequate. The defendant City of New York produced training materials related to EDPs for the period 2008-2014.  During this period there were no significant revisions or edits to these training materials. During that period, there was no Crisis Intervention Unit Training ("CIT"), which was a serious deficiency in the training program. Crisis Intervention Training (CIT), which teams police with mental health professionals, advocates, and academics to develop comprehensive plans for addressing problems involving mentally ill community members has evidence based results (Dupont, Cochran, & Pillsbury, 2007; PERF, 2012).

Based upon my expertise, knowledge, and direct experience (as a Police Academy- Social Science/Behavioral Science instructor, seminar coordinator, squad supervisor and then commanding officer/chairperson for periods spanning 1985- 2001) the content for the training of police recruits on the handling of people with mental illness for the period of 2008-2014 has remained consistently below standards with minimal redevelopment.[1]

### B. Trainings for Existing Officers

According to the materials I received from the NYPD, prior to 2015, officers who have already graduated from the Police Academy, other than sergeants, would not receive any meaningful new or updated training on how to handle EDPs. This includes detectives, who are not retrained on any EDP related issues following their promotion to detective.

As indicated by the Office of the Inspector General, "Until the summer of 2015, NYPD had one basic form of training for police officers on how to handle encounters with people in mental crisis. Since 2002, both recruits and promoted officers within the Department received a one-day training led by instructors from John Jay College of Criminal Justice. The earlier form of training involved a short, basic lecture on mental illnesses in the morning and then had a few of the officers engage in a total of four role-playing scenarios in the afternoon, involving schizophrenia, manic-depression, and a suicidal officer." Putting Training Into Practice: A Review of NYPD's Approach to Handling Interactions with People in Mental Crisis (Jan. 2017), at 10.

Given the number of EDPs that each officer on the force is required to interact with, this training was inadequate and well below acceptable national standards.

### IV.    CASE FACTS:

My opinions in this case are based on the following set of facts which I have gleaned from reviewing the materials referenced above.

On 04/25/2015 at 14:14 hours, Det. Matias and Det. Carter, two police Detectives with over 30 years on the force, responded to the home of Mr. David Felix, a private residence that houses individuals with mental illness, at 538 East 6th Street New York, NY 10013.   The detectives were assigned the task of arresting Mr. Felix for an alleged violent robbery he had allegedly committed a few days earlier.   Both detectives were aware that in the course of this alleged robbery, Mr. Felix was accused of violently attacking the individual he was robbing.  The detectives were also aware that Mr. Felix knew the victim and that they had maintained a friendship for some period of time prior to the violent robbery.

---

[1] There was a period 1998-2001 when a major reconstructive revision was in progress.  However, toward the later part of 2001 (Post 9/11) the Director of Training at the time dismantled the reconstructed curriculum, eliminating the Behavioral Science curriculum and department, merging all three separate academic curricula into one generic one. Much of the strong content relative to Crisis Intervention (including the Memphis Model of CIT Training) and Police Response to People with Mental Illness training was eliminated or watered down.

Upon arrival at this location, the detectives immediately became aware that the facility was a residential facility for individuals with mental health issues. The Detectives showed Employee Resident Counselor Danielle Steeley a document with Mr. Felix's photograph. Ms. Steeley believed that document to be a valid warrant. She also, according to her Grand Jury testimony, advised the Detectives that David Felix was a resident of this mental health facility, had been diagnosed with paranoid schizophrenia, and was on medication for his mental illness. Carter testified at the Grand Jury and at deposition that he remarked to his partner "Oh Shit" upon learning this information about Mr. Felix. Thus, prior to any interaction with Mr. Felix, both detectives were aware of Mr. Felix's violent past and that he had mental health issues. Despite this knowledge, and contrary to what a reasonably prudent police officer should have done, the detectives decided to take Mr. Felix into custody, although at that point they did not even know whether he was actually in his apartment.

Ms. Steeley escorted the detectives to Mr. Felix's apartment, which was apartment 6C on the sixth floor of the residence. Notwithstanding not obtaining a response, and with no reasonable belief that Mr. Felix was inside, the detectives entered the apartment.

Upon entering Mr. Felix's apartment, Det. Matias and Det. Carter observed someone they believed to be Mr. Felix go out the window and run down a fire escape. Det. Matias and Det. Carter retreated out of the apartment and down the inside stairs and confronted Mr. Felix in front of the elevator on the first floor. A struggle ensued upon confrontation which took the detectives and Mr. Felix to the front door of the building and the hallway in front of that door. At some point, Det. Carter stepped back from Mr. Felix, drew his weapon, and fired his Glock 26 striking Mr. Felix once in the right chest area. Detective Carte testified: "I discharged a round firing center mass". (Carter Grand Jury Testimony at 493.) This shooting occurred in the hallway leading to the front door of the building. When he was shot, Mr. Felix had his back to the front door with his hands in the air and nothing in his hands. When he shot Mr. Felix, Det. Carter was facing the front door of the building and Mr. Felix stood between him and the front door.

There was a witness to this shooting. Melanie Wagner, a civilian who happened to be passing by the building at the time of the shooting, witnessed the shooting through the front glass door who confirms that when he was shot Mr. Felix had his hands up, with his back to the front door and while he was facing Detective Carter. She, stated: "The man in the white, long-sleeved T-shirt (his back) closest to me had his hands up at this point (the second man had a gun pointing my way)". (Wagner 04/25/15 Statement.) No other neutral or independent witness observed this shooting other than Ms. Wagner.

David Felix, a 24 year old, African-American male was brought in by ambulance and treated prior to arrival with CPR by EMS. Mr. Felix arrived at Mount Sinai Beth Israel Emergency Department after sustaining a single gunshot wound in the right chest and was pronounced dead at 14:38 on April 25, 2015.

## V.    OPINION TO BE RENDERED REGARDING THE DAVID FELIX MATTER:

Based on my extensive educational background in Mental Health and my direct professional experience with the NYPD Police Training as it relates to Police Response to Mental Illness and

Crisis Intervention and my understanding of national standards, I can attest to acceptable police practices, procedures, protocols, safety rules and standards of care regarding the handling of EDPs (Emotionally Disturbed Persons as they are referred to in the NYPD vernacular) in the NYPD. Based on all these factors, including a consideration of the facts of this case, it is my professional opinion that the NYPD failed to adequately and appropriately train members of the force for handling EDPs.

According to Det. Carter's own testimony before the Grand Jury and corroborated by Danielle Steeley's Grand Jury testimony, Det. Matias and Det. Carter were aware that David Felix lived in a residence for mentally ill persons, that he was diagnosed as a paranoid schizophrenic, and that he was taking medication for his mental illness. (Carter Dep. at 68:16-25; Steeley Grand Jury Testimony at 164:23-165:6.)

Det. Carter testified in his deposition that he was aware before he encountered Mr. Felix that he resided at the "Bridge" a residential facility specifically for people with mental illness, had a diagnosis of paranoid schizophrenia, was taking medication for mental illness, and had a history of violence (*i.e.* I-Card allegations of throwing his girlfriend's head into a wall). (*See, e.g.*, Carter Dep. at 68.) Det. Carter affirmed that he was aware of all of this prior to confronting David Felix on April 25th.

Det. Carter's testimony further reveals his awareness of department policy PG 216-5 "Policing the Emotionally Disturbed," ensuring that an ambulance and a Patrol Supervisor are responding. (Carter Dep. at 133-134.) Dets. Carter and Matias failed to take appropriate action consistent with the handling of a person with mental illness based upon department policy and training. According to Det. Carter's deposition, he received training in 1994 as a police recruit and then regarding whether or not he received training after leaving the academy he stated "We have a lot of, you know, training". There was a failure on the part of both Detectives to effectively apply whatever minimal training on "EDPs" was received, specifically to recognize that David Felix was a potential EDP and to immediately request a patrol supervisor and ambulance. Further Detective Carter not only failed to ISOLATE and CONTAIN David Felix but escalated the incident, all contrary to NYPD policy, resulting in the tragic death of a person with mental illness. The Training material (supplied by the City of NY) states:

> "On occasion, EDP's come to police attention because their actions are criminal, and result in injury to people or damage to property. When this happens and it is clear that a person who has committed a crime is an EDP, he or she will be taken to a mental health facility. When such a person is cleared for release by the mental health professionals, he or she should be arrested, charges with the crimes involved, and taken to court for criminal proceedings. Whenever a person who is about to be arrested is acting irrationally or violently resists arrest, the Patrol Guide procedure to Mentally Ill or Emotionally Disturbed Persons will be instituted (Patrol Guide: 216-05; Patrol Guide 208-06)."

(*See* DEF 4531 at 5.)

Moreover, at the time they confronted Mr. Felix in the manner that they did, no exigent or emergency circumstance existed that would have justified the detectives to take the action they

did. Indeed, prior to gaining entrance into Mr. Felix's apartment, the detectives didn't even know whether Mr. Felix was in residence. Detective Carter's escalation and the decision to take David Felix into custody demonstrates a lack of recognition that he was potentially encountering a person with a mental illness who had recently been engaged in violent felonious conduct. Their failure to back off and call their supervisor for guidance and potentially assistance from additional police officers, is a reflection of poor training and lack of reinforcement training through "in service training and scenario based training" that helps to bridge the gap between theory and practice. This opinion was further supported by an NYPD report authored by Captain James Fulton, Executive Officer of the Firearms and Tactics section, who indicated that the detectives "would have been prudent if they requested additional backup personnel, due to the violent criminal past and mental history of the perpetrator, prior to their interaction." (*See* Final Report for DFDRBT # 15-026 in the Confines of Ninth Precinct, Patrol Borough Manhattan South (May 4, 2017), DEF2255-DEF2261 at DEF2260.) This is also reflected in the final recommendation from the Chief of the Department to the Police Commissioner in the Final Summary Report of Firearms Discharge Review Board Case # 2015-26, in which the Chief of the Department reiterated, "[i]n reviewing the tactics employed by the detectives it was determined that the detectives would have been prudent if they requested additional backup personnel, due to the violent criminal past and mental history of the perpetrator, prior to their interaction. (Final Summary Report of Firearms Discharge Review Board Case # 2015-26 dated August 2, 2017, DEF2011-DEF2016, at DEF2015). The Chief recommended retraining.

## VI.    THE NECESSITY OF ADEQUATE CIT TRAINING:

The President's Task Force on 21st Century Policing (2015) and the 2017 National Consensus Policy on Use of Force (a collaborative effort among 11 of the most significant law enforcement leadership and labor organizations in the United States (including the International Association of Chiefs of Police) define de-escalation as follows:

> "Taking an action or communicating verbally or non-verbally during a potential force encounter in an attempt to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary. De-escalation may include the use of such techniques as command presence, advisements, warnings, verbal persuasion and tactical repositioning"

The National Consensus Policy reflects the best thinking of all consensus organizations and is intended to serve as a template for law enforcement agencies to compare and enhance their existing policies. Generally, these organizations and others have argued that police use of force will decrease in frequency if police training more comprehensively covers and emphasizes de-escalation tactics.

Police frequently come into contact with mentally ill persons, who present special problems that can sometimes lead to confusion, conflict, and violent confrontation (Augustin & Fagan, 2011).

CIT training teaches police officers communication and resolution skills to help them successfully interact with mentally ill individuals in ways that reduce tension, achieve mutual understanding, and reduce negative outcomes (Sanow, 2006).

Research suggests this form of training is successful in reducing use of force (Abby et al., 2016; Compton et al., 2011), putting individuals with mental illness at ease, reducing risk of injury, and reducing unpredictability (Hanafi, Bahora, Demir, & Compton, 2008).

CIT is also associated with decreased arrest rates and increased referrals (Steadman, Deane, & Borum, 2000). Young and Brumley (2009) found officers who received CIT training were more satisfied with their perceived ability to manage crisis situations.

Teller and colleagues (2006) found CIT training significantly increases the chances that a police-involved person with mental illness will gain access to treatment. The training is also associated with an increase in the number of calls stating the citizen may have a mental illness and an increase in the number of transports of mentally ill persons to an emergency treatment facility.

Without robust de-escalation training, like CIT Training, unnecessary uses of coercive and deadly force against people with mental illness will continue, and it will continue to be ruled that the officers were justified in their decisions.

In my opinion, the NYPD has failed for over 20 years to adequately train officers in the most basic treatment of EDPs.

## VII.    OPINION REGARDING  INEFFECTIVE TRAINING OF NYPD OFFICERS:

The NYPD has failed for over 30 years to adequately train its officers, both recruits and officers, in appropriately handling EDPs.

By initially failing to institute any Crisis Intervention Training program into the curriculum, and failing to train officers in any manner, let alone a sufficient manner, the NYPD has repeatedly demonstrated a failure to train officers on how to adequately respond to emotionally disturbed persons ("EDPs").

Using the instant case as an example, Detectives Matias and Carter both testified that they had not been trained in how to respond to an EDP since their initial training in the Academy, over 20 years prior to their interaction with Mr. Felix. (*See* Course Transcript of Defendant Officers, DEF12400-12411.)

The number of 911 EDP calls increased by more than half from 2009 to 2016, reaching nearly 180,000 in 2018.

In 2015, City Hall promised "crisis intervention training" for all NYPD officers to help them de-escalate interactions with the mentally ill. Today, just 11,970 of the NYPD's 36,753 uniformed cops have been trained — and some may never be.

In most of the 14 deaths recorded in the last three years (including David Felix), NYPD officers on the scene were trained under a stale 30 year old curriculum (with the exception of a short span of time from 1998-2001 when the training was under reconstruction and redevelopment and then again in 2002 when the curriculum was collapsed into one document).

The list of casualties as a result of the stale and superficial NYPD training curriculum is well documented in the deaths of Luis Baez (1979), Eleanor Bumpers (1984), Alfred Sanders (1987) Kevin Cerbelli (1998), and many more.

It is my opinion that New York City's policies with respect to training officers on treatment of EDPs is woefully deficient and has been woefully deficient since at least 2008 and continuing to the present. The City of New York has had years of knowledge of these deficiencies including, but not limited to, repeated reports that thoroughly document these deficiencies. This is most recently evident in the 2017 report issued by the Office of the Inspector General for the NYPD, which found "several fundamental programmatic and training flaws in NYPD's CIT initiative." The Report notes that no CIT Training Program existed prior to the summer of 2015. In fact, it provides that, since at least 2002, the only training for recruits and *promoted officers* was a "one-day training led by instructors from John Jay College of Criminal Justice." The Report goes on to describe a training involving "a short, basic lecture on mental illnesses in the morning and then had a few of the officers engage in a total of four role-playing scenarios in the afternoon, involving schizophrenia, manic-depression, and a suicidal officer. The officers did not have the opportunity to interact with anyone living with mental illness, nor did they receive any evaluation or testing after the training was complete. Instead, routine training for patrol officers essentially amounted to an introduction to the basics of mental illnesses and the need for officers to understand the often difficult nature of their interactions with people who might be in the midst of a mental crisis." *Putting Training Into Practice: A Review of NYPD's Approach to Handling Interactions with People in Mental Crisis* (Jan. 2017), at 10.

Significantly, Chief Tobin, a Rule 30(b)(6) witness for the City of New York in this case, testified that detectives did not receive any follow-up training on how to deal with persons suspected of being EDPs upon earning their shields, which means that the only substantive training that Detectives Carter and Matias received prior to this incident was decades old.

In my opinion, David Felix would have been alive and treated for his schizophrenic symptoms, if the Detectives involved in this case had received the appropriate level of training as should be expected of one of the largest police agencies in the country. Regrettably, they did not.

## VIII.  SUMMARY ANALYSIS

Detective Carter failed to comprehend that David Felix was a violent person, having just been accused of a violent robbery, who had potentially explosive mental health issues,  Despite being informed by the staff of the "Bridge", a residential facility housing mentally ill persons,  that David Felix was in fact schizophrenic and being treated with medication, the Detectives decided to gain entrance to Mr. Felix's apartment in an attempt to take him into custody.  Based upon the review of the Academy curriculum provided by the Defendant City of New York, my direct knowledge of the Academy curriculum spanning three decades, the testimony of all witnesses (particularly

Det. Carter and Danielle Steeley), the Academy training received by Dets. Carter and Matias lacked in substance to be able to ultimately achieve an effective outcome. Isolation and containment of David Felix was neither attempted nor achieved. The patrol supervisor and ambulance were never called until David Felix was laying in the vestibule bleeding after being shot from point blank range by Det. Carter.

Proper training of both of these Detectives reinforcing how to recognize and achieve effective intervention strategies when encountering an alleged violent felon with a documented mental illness, would have been the accepted standard of care under these circumstances and would have likely led to a much more humane outcome in this case. This, in my opinion, is a reflection of superficial training and lack of reinforcement through ongoing scenario based training that helps to bridge the gap between theory and practice. As a further indication of the NYPD's failure to adequately embrace an effective policy and practice for dealing with EDPs, in 2015, the NYPD incorporated CIT into a newly developed curriculum, however it is clear, based on the 2017 Report by the NYPD's Inspector General, that the NYPD has not embraced the need for effective training of officers. It is disappointing and egregious that the oldest and largest police agency in the country, operating for 174 years, is still superficially training their police to effectively handle people with mental illness. David Felix and the at least 14 other people with mental illness who needlessly lost their lives in the last three years deserved more from those entrusted with their care and protection. The training of NYPD police in the area of mental illness is not a new discussion and has been in need of repair since 1979.


Respectfully submitted,

Grace Telesco, Ph.D., M.A., A.A.E.T.S.

# EXHIBIT 1

Dr. Grace A. Telesco                                              C.V.
2908 NW6TH TE, Wilton Manors, Florida 33311
917-579-3750  gt243@nova.edu

---

## EDUCATION
---

**FORDHAM UNIVERSITY**
Graduate School of Social Service
Social Work
**Ph.D.**
2001

**JOHN JAY COLLEGE OF CRIMINAL JUSTICE**
**Master of Arts**
Criminal Justice
1991

**Bachelor of Science**
Police Science
1988

---

## NOVA SOUTHEASTERN UNIVERSITY
FISCHLER COLLEGE OF EDUCATION, SCHOOL OF CRIMINAL JUSTICE
DOCTORAL, MASTERS AND UNDERGRADUATE PROGRAM
ASSISTANT PROFESSOR
2010 - PRESENT

**SOCIODRAMA COMMUNITY INITIATIVE & SOCIODRAMA CLUB ADVISOR**
2017- PRESENT

## CRIMINAL JUSTICE PROFESSIONAL EXPERIENCE

## NEW YORK CITY POLICE DEPARMENT
JANUARY 1983 -  JANUARY 2003
POLICE OFFICER, SERGEANT, LIEUTENANT, LIEUTENANT SPECIAL ASSIGNMENT

PATROL OFFICER/SERGEANT -  BROOKLYN, NEW YORK- HOUSING DEVELOPMENTS
INSTRUCTOR & SUPERVISOR NYPD POLICE ACADEMY
COMMANDING OFFICER, RECRUITMENT SECTION
COMMANDING OFFICER, DEPARTMENT CHAIR, BEHAVIORAL SCIENCE -NYPD POLICE ACADEMY
COMMANDING OFFICER, COMMUNITY AFFAIRS DIVISION
PROGRAM DIRECTOR, OFFICE OF THE MAYOR OF THE CITY OF NEW YORK. SEPT 11TH
RESPONSE/RECOVERY EFFORTS.

2908 NW6TH TE, Wilton Manors, Florida 33311
917-579-3750  gt243@nova.edu

_____

## Other ACADEMIC EXPERIENCE

**WALDEN UNIVERSITY**
CRIMINAL JUSTICE PROGRAM ONLINE
DOCTORAL/GRADUATE PROGRAM
CONTRIBUTING FACULTY
2017- PRESENT

**BARRY UNIVERSITY**
SCHOOL OF SOCIAL WORK, DEPARTMENT OF SOCIOLOGY
GRADUATE AND UNDERGRADUATE PROGRAMS
Adjunct Assistant Professor
2005-2016

**MIAMI DADE COLLEGE**
 SCHOOL OF JUSTICE- B.A.S. PUBLIC SAFETY MANAGEMENT
Assistant Professor
2007 – July 2010

**EAST STROUDSBURG UNIVERSITY OF PENNSYLVANIA**
 DEPARTMENT OF SOCIOLOGY, CRIMINAL JUSTICE, AND SOCIAL WORK
Assistant Professor
 2002 to 2005

**FORDHAM UNIVERSITY**
GRADUATE SCHOOL OF SOCIAL SERVICE
Adjunct Assistant Professor
2001 to 2004

**JOHN JAY COLLEGE OF CRIMINAL JUSTICE**
SPEECH, THEATER AND MEDIA SERVICES DEPARTMENT
Adjunct Assistant Professor
1991 To 2003

2908 NW6TH TE, Wilton Manors, Florida 33311
917-579-3750  gt243@nova.edu


**Curriculum Subject Matter Expert**

**Police, Policing, Police Administration**

**Mental Health, Substance Abuse & Criminal Justice**

**Research Design & Methods**

**Criminal Justice Issues & Administration**

**Criminology & Deviance**


## PROFESSIONAL EXPERIENCE
_____
**NEW YORK CITY POLICE DEPARMENT**
CITY OF NEW YORK, MAYOR'S COMMUNITY ASSISTANCE UNIT
**Interagency Emergency Mental Health Coordinator**
Lieutenant Special Assignment
September 11, 2001 to January, 2002

Worked directly for Rudolph Guilliiani, Mayor City of New York and responsible for the interagency coordination and delivery of mental health services for the families of the victims of the World Trade Center attack at the Family Assistance Center at Pier 94. Provided crisis intervention and grief counseling to the families of the victims and coordinated a pro-active mental health response that included services from Red Cross mental health practitioners, the New York City Department of Mental Health, Spiritual Care providers, Pet Therapy Dogs, and members from the Oklahoma City Memorial.

**NEW YORK CITY POLICE DEPARMENT**
Lieutenant Special Assignment
January, 2002 – January 2003
Provided Stress Management Seminars for all First Responders in NYPD.


**U.S. Dept of Health & Human Services**
**Substance Abuse  and  Mental Health Service Administration (S.A.M.H.S.A.)**
**DTAC  (Disaster Technical Assistance Response) Team  Deployment**
New Orleans, Louisiana
September 2005
Provide assessment of mental health services to State Office of Mental Health Commissioner,

Center for Disease Control, and Surgeon General's Office, New Orleans Police Department Psychological Services Unit. Conduct CISD for social work staff at Louisiana State University and Louisiana State Office of Mental Health. Provided technical assistance and consultation to Disaster Coordinator Louisiana State Office of Mental Health in development of Family Assistance Center.

## NEW YORK CITY POLICE DEPARMENT
**COMMUNITY AFFAIRS DIVISION**
Lieutenant Special Assignment
November, 2001 to May, 2002

Provided ongoing consultation to New York City Police Department's Early Intervention Unit and Personnel Bureau on mental health issues relative to post September 11th critical incident stress and trauma. Conduct staff development seminars and stress management retreats for Early Intervention Unit staff and high risk responders. Developed quantitative measurement instrument to assess variables of post traumatic stress, depression, anxiety, alcohol use, and coping strategies in police officers post September 11th.

## OTHER PRIOR PROFESSIONAL AND LAW ENFORCEMENT EXPERIENCE
## NEW YORK CITY POLICE DEPARMENT
## COMPSTAT MANAGER
Lieutenant
May, 2001 to May, 2002

Responsible for the development and oversight of a premier quantitative research initiative and assessment project to examine levels of community satisfaction relating to the delivery of police service.

Responsible for; the development of community relations indicators to longitudinally measure police-community relations, data collection and analysis, including the analysis of a neighborhood satisfaction survey, and various analysis strategies to identify police-community problematic trends in each precinct and develop programs/policies to address such problem areas. Develop, design, implement, and evaluate innovative and novel programs, policies, and initiatives to enhance police/community relations, based on data analysis. Conduct ongoing literature reviews on national and international police-community issues.

## NEW YORK CITY POLICE DEPARMENT
**NEW YORK CITY POLICE ACADEMY**
**BEHAVIORAL SCIENCE DEPARTMENT**

## Chairperson/Commanding Officer
Lieutenant
May, 1998 to May, 2001

Responsible for the supervision, scheduling, and professional development of fifty (50) police instructors and the development of the Behavioral Science Curriculum taught to all entry level

police recruits, consisting of four tracks of learning; Effective Communication and Cultural Competence, Ethics and Mental Health, Crisis Intervention, and Service Role.  Responsible for the development and implementation of all aspects of training in the Behavioral Sciences, including methodology, curriculum writing, evaluation and research.

## NEW YORK CITY POLICE DEPARMENT
**RECRUITMENT SECTION**
**Lieutenant/Commanding Officer** August, 1996 to May, 1998
Responsible for the management of staff, implementation of recruitment strategies & policies specifically targeting women candidates and people from the lesbian, gay, bisexual and transgender communities, and those from diverse racial and ethnic populations, coordination and development of recruitment advertising campaigns through the solicitation of funds from major donors. Responsible for two major recruitment campaigns, successfully recruiting over 50,000 interested applicants from diverse populations.

## NEW YORK CITY POLICE DEPARMENT
**DEPUTY COMMISSIONER OF TRAINING**
**OFFICE OF WOMEN'S PROGRAMS & POLICIES-** Commanding Officer- 1993 To 1996

Responsible for the coordination and development of 4 Women in Policing Conferences, facilitated the creation of an action plan on women's concerns, responsible for the inventory and analysis of historical and statistical data

## NEW YORK CITY POLICE ACADEMY BEHAVIORAL SCIENCE DEPARTMENT
**Instructor**
**Curriculum & Seminar Coordinator**
1985 To 1993

Conducted and created training in the Social Science curriculum for recruit officers. Curriculum included issues of crisis intervention, victimology, domestic violence, sexual assault, pedophilia, interacting with the elderly as crime victims, handling emotionally disturbed persons.

## OTHER PROFESSIONAL AND LAW ENFORCEMENT EXPERIENCE
_____

Expert Witness, Training of NYPD Police Officers in the Handling of People with Mental Illness CITY OF NEW YORK, CORPORATION COUNSEL.

2019 Expert Witness Police Response to Mental Illness. 3 Active Cases

**Beyond Good and Evil**
Motion Picture (120 minutes)
Director, Screenwriter

With a plot merging alcohol abuse, a stressed police force and a murder mystery, the feature film Beyond Good and Evil became much more than the police training video its creators set out to make. - Sun Sentinel: June 29, 2008 By Julie Landry

http://articles.sun-sentinel.com/2008-06-29/community/0806260567_1_police-training-police-officer-law-enforcement

## OTHER TRAINING EXPERIENCE

**Expert Witness on Mental Health and Policing**
**Consultant/ Police Trainer**                                    **2005-PRESENT**

**WOLFBEAR INSTITUTE**
Master Trainer
www.wolfbearinstitute.org

**Shepherd's Bridge Homeless Outreach**
 (Davie, Florida)                                                  2011

**Sunserve** (Ft Lauderdale)                                       2010

**Women in Distress**                                              2006 - 2009
Sociodrama Program

**Hospice Care of SouthEast Florida**                              2005 - 2006
Organizational Development Retreat

**Camp Coral** Bereavement Program                                 2006

**Sunshine Cathedral**                                             2005
Buddy Program Advanced Sociodrama Training

**The Good Dog Foundation**                          September 2005 & 2004
Effective Communication, Crisis Intervention &
Disaster Response Training

**Retreat for Peer Educators**                              Sept. 16-17, 2004
Women's Resources, East Stroudsburg, Pa.
2 day retreat- training of 25 participants in the use of socio drama to educate peers about sexual and dating violence.

**NASW-PA Chapter Annual Conference 2004:**              March 18-20, 2004
New Routes to Social Work Success
 A 6 hour Interactive Socio-Drama Training/Workshop for Social Workers
Highly charged practical workshop demonstrating how socio-drama can be used in the

education and training of social workers about topics of oppression.

**Third Annual Philadelphia Trans-Health Conference**          March 12-13, 2004
Healthy Bodies, Healthy Lives, Healthy Community
Workshop- In My Shoes: Using Socio-drama as a Tool to Raise Consciousness about
Homophobia, Trans-phobia, and Gender Conformity.


## RESEARCH EXPERIENCE

2011- Present  NOVA Southeastern University Criminal Justice Institute: Chair/Member
Student Dissertation Committee

2002 – Present Professor of Research at the undergraduate, graduate and doctoral level

2002 - 2004  Principle Investigator of a study at Fordham University examining the
correlation and impact of exposure working with families of the victims of the World
Trade Center Attack had on police officer's psychological well being. The investigation
also exploredr levels of post traumatic stress, anxiety, depression, and coping
strategies.

2003 – 2004 Assisted in the data collection of an opinion poll conducted in Monroe
County,
Pennsylvania on Issues Important in Death Penalty Decision Making.

2001 – 2002 Research Project Manager of New York City Police Department (NYPD)
COMP STAT- Community – Police Relations Survey measuring effectives of police
community relations in the NYPD through citizen/community focus groups and quantitative
indicators
1998- 2001 Chairperson of the New York City Police Department (NYPD) Behavioral
Science Department at the NYC Police Academy- responsible for ongoing assessment
and quality assurance surveys

1997- 1998 Principal Investigator of   New York City Police Department (NYPD) Police
Candidate Satisfaction Survey, an opinion poll measuring police candidate satisfaction with
the process of screening and hiring candidates for the NYPD utilizing focus groups and
quantitative measures

1996 – 1998 Director of the New York City Police Department (NYPD) Recruitment
Section – responsible for massive recruitment campaigns of 25,000 applicants

1995 -1996 Principal Investigator for the New York City Police Department (NYPD)
Disability Retirement Section Quality Assurance Assessment.

1996 – 2001 Author and Principal Investigator of a Quantitative Domestic Violence
Research Study in partial fulfillment of Doctor of Philosophy at Fordham University,

winning the Fordham University Langenfeld Research Award in 2002.

---

**PROFESSIONAL PRESENTATIONS / ACCOMPLISHMENTS**

---

Florida League of City Mayors Conference on Police Brutality 2016

Disaster Ministry Sacred Journey Interfaith Seminary 2014- Present

Disaster Ministry New Vision Interfaith Seminary 2013

The Shepherd's Bridge Ministries, workshop on mysticism and meditation – 2011

Interfaith Temple of New York City, 2011 presentation on stress management.

National Association of Social Workers, Florida Chapter. Presentation on Disaster Crisis Intervention 2010. Broward General Hospital.

Women in Distress – Sociodrama Presentations on domestic violence 2006 – 2009.

Philadelphia Department of Health, Aids Activities Coordinating Office- Transgender Health Conference. Developed and facilitated workshop for community leaders, activists, advocates and social service agency staff on sociodrama as a form of educational theater and its use as an invaluable and highly effective tool in anti-racism, anti-homophobia, and anti-transphobia training. March, 2004.

National Association of Social Work Annual Conference: *New Routes to Social Work Success* Continuing Education Workshop. Developed and facilitated 6 hour continuing education workshop for social workers on sociodrama as a form of educational theater and its use as an invaluable and highly effective method in the education and training of social work staff about a variety of challenging topics including sexual assault, domestic violence, crisis intervention, conflict resolution, racism, sexism, and homophobia.. March, 2004

Presented sociodrama workshop on Alcohol, depression and suicide with Sociodrama Ensemble (ESU students) for community members, faculty and students on campus. April 2004.

National Association of Social Work- Pennsylvania Chapter. Continuing Education Workshop. Presented continuing education workshop on Community Disasters and the Social Work

Response. January, 2004

Presented sociodrama workshop on Domestic Violence with Sociodrama Ensemble (students) at Open House representing Sociology Department/East Stroudsburg University. November 2003.

Presented sociodrama workshop on Hate Crimes with Sociodrama Ensemble (ESU students) at Hawthorn Residence Hall open forum in response to hate crime on campus. November 2003.

Conducted all day staff development and training workshop for RedCo/Families and Children Therapy (FACT), East Stroudsburg, PA on client and case worker issues, utilizing sociodrama techniques. October 2003.

Expert witness for the New York City Corporation Counsel in the area of Mental Illness and Training of New York City Police Officers. Testified at City Council hearings on mental health, grand jury, Federal, and Civil trials. 1998 - October 2003

Presented sociodrama workshop with John Jay College students at John Jay College of Criminal Justice on issues of voting registration, hate crimes, domestic violence, and substance abuse by youth. October - November 2003.

Presented all day training workshop for Keyspan Corporation staff on crisis intervention, conflict resolution, and effective communication. March 2003.

Presented sociodrama workshop on Alcohol Use and Abuse on Campus with Sociodrama Ensemble (ESU students) at Abeloff Convocation Center for Alcohol Awareness Committee forum. April 2003.

Developed "white papers" curriculum for Cultural Diversity and the Police Grant Project (CDAP) on Cultural Competent Police Response to the Lesbian, Gay, Bisexual, and Transgender Communities. Model curriculum to be utilized by 5 major police departments

NASW (New York Chapter) Continuing Education workshop on Social Work and Law Enforcment Collaboration. 2002.

Keynote Speaker for Fordham University Graduate School of Social Service Symposium on Trauma: "Crisis Intervention and Mental Health Response for Families of the Victims of the WTC Attacks". 2001

St. Peter's University Hospital University of Medicine and Dentistry of New Jersey: Seminar for Social Work Staff on Crisis Intervention and Theater Techniques, 2000.

Developed, coordinated and presented various socio-drama presentations for New York Police Department Office of Equal Employment Opportunity on issues of Racism, Sexism, Homophobia, reasonable accommodation for religious observance and disability, and employment discrimination. 2000.

American OrthoPsychiatric Association Annual Meeting and Symposium on Race-Related Police Violence: Mental Health Approaches to Prevention and Intervention: Featured Speaker, 1999.

Fordham University Graduate School of Social Service: Featured Speaker on Crisis Intervention Utilizing Theater Techniques. 1999

Featured Guest on Discovery Channel Documentary on the New York City Police Academy Behavioral Science Training  1999.

Featured Guest on ABC News Documentary on the New York City Police Academy Behavioral Science Training  1999.

Featured in City Journal on the New York City Police Academy Behavioral Science Training 1999.

Catherine McCauley High School Mental Health Fair: Keynote Presentation - Interactive Socio-Drama on Issues of Oppression. 1998.

Conference on Poverty and Disability: A Call to Action. Presented Interactive Soco-drama on Developmental Disabilities and Effective Police Response. 1998

Developed socio-drama program for New York Police Department Counseling Unit on issues of Alcoholism. 1998.

Ithaca Battered Women's Program/ Conference on Domestic Violence Presenter: Issues of Same-Sex Domestic Violence and Police Response. 1998.

John Jay College of Criminal Justice Multi-cultural Conference: Presenter of Interactive Socio-Drama on Issues of Oppression. 1997.

New York City Gay & Lesbian Anti-Violence Project Domestic Violence Conference: Panelist-Presented on Issues of Same-Sex Domestic Violence. 1996.

National Gay and Lesbian Task Force Conference
Workshop Facilitator/ Presented on Issues of Same-Sex Domestic Violence. 1996

Development and Direction of the Training Film "Final Warning" A look at domestic violence when it is perpetrated by the police. 1997.

Fordham University School of Law Role-Playing Law Clinic on issues of Domestic Violence. 1996.

Featured in New York Times on the New York City Police Academy Behavioral Science Training  1988.

Development and Direction of the Training Video "What's Right With The Job" A look at positive

aspects of policing.  1986

## SCHOLARLY PUBLICATIONS

---

Telesco, G. (2019) Never Forget, Sometimes Forgotten, Often Haunted: The Effects of 9/11 on First Responders 18 years Later. Journal of the American Academy of Experts in Traumatic Stress. October Issue.

Telesco, G. (2017) Race, riots, and the police. *Police Practice and Research*, Book Review

Telesco, G.(2017). Legal guide for police: constitutional issues. *Police Practice and Research*, Book Review. pp. 1–2

Telesco, G (2016). Police Practice and Research: An International Journal. Book Review "The Ville" Greg Donaldson. Summer Publication.

Cusack, C. & Telesco, G., Nonconsensual Insemination: Intimate partner violence, patriarchy, police education and policy, 4 J. L.& Soc. Deviance 271 (2012)

Telesco, G. (2011). Officers in Crisis. Journal of Police Crisis Negotiations. Volume 11 (1) 40 -56

Telesco, G. (2010). Treating Gambling Disorders: A Book Review. *Journal of Teaching in Social Work: Innovations in Education, Training, and Educational Practice.* Scheduled for publication Spring 2010.

Telesco,G. (2009)  Case Studies on Sexual Orientation and Gender Expression in Social Work Practice: A Book Review.  *Journal of Teaching in Social Work*: Innovations in Education, Training, and Educational Practice. Volume 29 (3) pp. 363 – 366.

Telesco, G. (2009). Group Work with Specific Populations. Police Officers. *Encyclopedia of Social Work with Groups*. Taylor & Francis. pp. 226 -228.

Telesco, G. (2006). Using sociodrama for radical pedagogy: Methodology for education and change. Radical Pedagogy. Volume 8 (2).

Telesco, G. (2005). Emergency Preparedness. *The Encyclopedia of Federal Law Enforcement* .Vol 3.  SAGE Publications.

Telesco, G.& Piotrkowski, C. *Coping, meaning, and threat appraisal as predictors of PTSD symptoms among police officers assisting families of victims of the -world trade center attacks.*

Telesco, G. (2004). A caregiver's reflection on September 11. In B. Collins & T. Collins (Eds.). *Crisis and trauma: Developmental-ecological intervention.* NY: Lahaska Press. pp. 527-538.

Telesco, G. (2004). *Sociodrama and structured improvisation: Methodology for education, training, healing, and change.* New York Adult Learning Journal.


## SCHOLARLY PUBLICATIONS

Telesco, G. (2004). Sex role identity and jealousy as correlates of abusive behavior in lesbian relationships, hi M. Sullivan (Ed.). *Sexual minorities: Discrimination, challenges and development in America.* NY: Haworth Press. pp. 153-169

Telesco, G. (2004). Sex role identity and jealousy as correlates of abusive behavior in lesbian relationships. *Journal of Human Behavior in the Social Environment.* Vol. 8 (2/3).pp. 153-169.

Patterson, G. & Telesco, G. (2004). Role of the first responders to mass violence. In L. Straussner & N. Phillips (Eds.) *Mass violence and social work practice.* Allyn & Bacon. pp. 117-126.

Telesco, G. (2003). *Sociodrama and structured improvisation: Methodology for education, training, healing, and change.* Paper presented at the International Conference on Sexual Assault and Harassment on Campus. Orlando, Florida. October 2003.

Telesco, G. (2002).Rescue and recovery: Providing crisis intervention to the families of the victims of the World Trade Center attack. *Reflections.* Volume 8, 3, 12-18.

Solomon, A. & Telesco, G. (2001). Theater of the recruits. Theater, 31 (3), 55-61.

Telesco, G. (2001). *Sex role identity and relationship factors as correlates of abusive behavior in lesbian relationships.* Doctoral dissertation (University Microfilms (3016007).

Telesco, G. & Fox, R. (1998). *Bringing a social service perspective to a police recruit  curriculum.* Paper presented at American Orthopsychiatric Association Annual Meeting and Symposium on Race-Related Police Violence: Mental Health Approaches to Prevention and Intervention.

Telesco, G. (1997). *Sex role identity and its association to abuse in lesbian couples.* Paper presented at Fordham University School of Law Domestic Violence Conference, March, 2002.

**AWARDS**

Fordham University  Langenfeld Research Award
New York Finest Foundation Doctoral Scholarship
John Jay College of Criminal Justice Master of Arts Scholarship
Department of Justice Crime Victims Service Award

**AFFILIATIONS**

American Academy of Experts in Traumatic Stress
American Association of University Professors
American Psychological Association
American Red Cross
Disaster and Emergency Response Association
National Sheriffs Association
International Association of Chiefs of Police