# EXHIBIT 39

POLICE DEPARTMENT
CITY OF NEW YORK

March 1, 2002

From: Commanding Officer, Brooklyn South Investigations Unit

To: Chief of Department

Subject: **FINAL REPORT- FIREARMS DISCHARGE WITHIN THE CONFINES OF PATROL BOROUGH BROOKLYN SOUTH**

1. The following additional required information is provided, as per your request, regarding the firearms discharge investigation conducted on August 31, 1999. The officer's involved were Sergeant Terence O'Brien, shield #3684, tax ▇▇▇▇, Sergeant Joseph Memoly, shield #1826, tax ▇▇▇▇, Police Officer William Loschiavo, shield #7751, tax ▇▇▇▇ and Police Officer Martin Sanabria, shield #7954, tax ▇▇▇▇ all assigned to the 66 Precinct. The follow up investigation of this incident was conducted by the Commanding Officer of Patrol Borough Brooklyn South Investigations, Captain DeLayne D. Hurley.

2. The following reports are added:

   - Firearms Discharge Report (PD 424-151)

   - UF49 signed by the investigation ranking officer (original was previously forwarded)

   - Full Medical Examiners Report

   - Diagram showing bullet wounds to body

   - Sketch with positions and distances

   - DD-5(s), witness statements

   - Central Personnel Index Report

3. The following information was verified:

- The perpetrator was pronounced DOA at Maimonidies Hospital, not at the scene.

- This case was assigned to ADA Jeff Ferguson. Clearance to interview the MOS was given on 3/2/01.

- On 11/1/99, a Grand Jury returned No True Bill against all MOS involved in this incident.

- The following is a listing of each officer's Department recognition and disciplinary history:

    Sgt O'Brien has received three (3) Excellent Police Duties, two (2) Meritorious Police Duties and one (1) Commendation. In 12/87, heeeee received a twelve (12) day suspension for disregarding Department procedures and excessive force. In 5/94, he received a forty-four (44) day suspension for excessive force, obscene language and false statements.

    Sgt Memoly has received sixteen (16) EPD's and three (3) MPD's. He has no prior disciplinary history.

    PO Sanabria has received one (1) EPD. He has no prior disciplinary history.

    PO Loschiavo has received five (5) EPD's and two (2) MPD's.  ██████████████████████████ In 4/99, the charge was dismissed. In 9/98, he was transferred for cause by direction of the Profiling and Assessment Committee.

- Sgt Memoly has one (1) prior firearms discharge, 1/97. Disposition- Within Department Guidelines, No Violation.

    Sgt O'Brien, PO Sanabria and PO Loschiavo have no prior firearms discharge.

- The following is the date of each MOS's last range appearance prior to the discharge:

    Sgt O'Brien- 5/18/99
    Sgt Memoly- 6/2/99
    PO Sanabria- 2/10/99

PO Loschiavo- 6/17/99

- The following is the date of each MOS's attendance at a Tactics Review Session:

    Sgt O'Brien- 10/5/00
    Sgt Memoly- 5/25/01
    PO Sanabria- 5/25/01
    PO Loschiavo- 10/5/00

- Lieutenant James Woods, PBBS Community Affairs, has maintained constant open communication with the community and reports there is no community unrest regarding this incident.

4.    Interviews:

Sergeant O'Brien was interviewed under the provisions of PG 206-13. He was represented by Sergeant Anthony Donadio, SBA. Sgt. O'Brien stated, in essence, that he received a radio transmission from 66 sector GK requesting a patrol supervisor due to an EDP at the location. He stated that when he arrived at the scene, he was approached by an unidentified M/W who informed him that there was a man with a hammer in the area who was running around trying to strike children. He was then informed by Officer's Gravitch and Sanabria that there was a man standing in a door way holding a hammer. Sgt. O'Brien stated that when he looked down the stairs, he observed a M/W, later identified as Gideon Busch, standing in the door way holding some type of object. He stated he also observed a M/B, later identified as Percy Freeman, standing halfway up the stairs. In an attempt to get to Mr. Busch, Sgt. O'Brien stated that he and P.O. Sanabria grabbed Mr. Freeman and attempted to get him off of the stairway. Sgt. O'Brien then stated that Mr. Busch began to yell "release", referring to the officers releasing Mr. Freeman, as he swung the hammer over his own head. Sgt. O'Brien stated that as he attempted to get away from Mr. Busch by proceeding up the stairs, Mr. Busch struck him with the hammer numerous times about the back and leg. Sgt. O'Brien also stated that Mr. Busch also attempted to strike him in the head, but he raised his left arm to block it and was struck on the left wrist. As he was being struck with the hammer, Sgt. O'Brien stated that he instructed P.O. Gravitch, who was leaning over the railing, to mace Mr. Busch. Sgt. O'Brien stated that P.O. Gravitch's mace had no effect on Mr. Busch. Sgt. O'Brien stated that he managed to get away from Mr. Busch by running up the stairs. When he reached the top of the stairs, he stated that he lost sight of Mr. Busch, at which point, he removed his firearm from its holster. Sgt. O'Brien also stated that he then observed Mr. Busch in the driveway, holding the hammer over his head, jumping up and down and screaming incoherently. Sgt. O'Brien stated that he then pointed his firearm at Mr. Busch and ordered him to drop the hammer. He stated that Mr. Busch then let out a loud scream and began to charge at him, holding the hammer over his head. Sgt. O'Brien then stated that when Mr. Busch came within 2-4 feet of him, with the hammer in an

attack like position, Sgt. O'Brien discharged six (6) rounds at Mr. Busch, causing Mr. Busch to cease his advance. Sgt. O'Brien also stated that other than his mace, he did not have any of the patrol supervisor's non-lethal devices with him. Sgt. O'Brien concluded by stating that he discharged his firearm because Mr. Busch's actions caused him to fear for his own life, the lives of the other MOS present and the lives of any civilians in the area.

Sergeant Memoly was interviewed under the provisions of PG 206-13. He was represented by Sergeant Anthony Donadio, SBA. Sgt. Memoly stated, in essence, that he received a radio transmission of sector GK's request for a patrol supervisor. He stated that when he arrived on the scene, he observed Sgt. O'Brien, on the stairs of the location, struggling to subdue a M/B. Sgt. Memoly stated that he was assisting Sgt. O'Brien when he heard P.O. Gravitch state "He's got a hammer!" Sgt. Memoly stated that he then looked at the base of the stairs and observed a M/W, later identified as Gideon Busch, swinging a hammer over his head and yelling incoherently. Sgt. Memoly further stated that Mr. Busch then struck Sgt. O'Brien, with the hammer, approximately 3-4 times about the body. He stated that he then instructed P.O. Gravitch to mace Mr. Busch, requested ESU and drew his firearm from its holster. He then stated that the mace had no effect on Mr. Busch and did not stop his advance. Sgt. Memoly further stated that all of the officers present retreated up the stairway, with Mr. Busch in pursuit, swinging the hammer. Sgt. Memoly stated that the officers then moved to the driveway, at which point, Mr. Busch was approximately seven (7) feet away from the officers swinging the hammer over his head and again yelling incoherently. Sgt. Memoly stated that he then verbally instructed Mr. Busch to drop the hammer. Sgt. Memoly further stated that Mr. Busch, with the hammer over his head, charged at Sgt. O'Brien. He then stated that when Mr. Busch came within about 1-2 feet from Sgt. O'Brien and with the hammer being lowered towards Sgt. O'Brien's head, he believed Sgt. O'Brien's life was in danger and he (Sgt. Memoly) discharged his firearm three (3) times in order to stop Mr. Busch's attack. Sgt. Memoly stated he had his mace on his gunbelt, but due to the immediate assistance that Sgt. O'Brien needed when Sgt. Memoly arrived on the scene, he did not look for any other non-lethal devices in the RMP.

Police Officer Sananbria was interviewed under the provisions of PG 206-13. He was represented by Carl Varella, PBA Attorney. P.O. Sanabria, in essence stated that he received a radio transmission of 10-54, EDP w/ a hammer. He stated that when he arrived on the scene, he was approached by a M/W who informed him that there was a man walking around the neighborhood, banging a hammer and scaring kids and that he went back into his apartment. P.O. Sanabria stated that he looked down the stairs at the apartment and observed a M/W standing in the doorway, banging the door frame with a hammer. P.O. Sanabria stated that when he told the M/W, later identified as Gideon Busch, to drop the hammer, Mr. Busch stated to him "I'm not putting the hammer down, you're gonna have to shoot me to put the hammer down." P.O. Sanabria further stated that P.O. Gravitch, over the radio, requested the response of the patrol supervisor and ESU. He then stated that when Sgt. O'Brien arrived, the officers attempted to restrain a M/B, later identified as Percy Freeman, who had attempted to intervene between the

officers and Mr. Busch. He then stated that P.O. O'Leary and himself had Mr. Freeman a few feet from the stairs and were attempting to handcuff him, when he heard screaming and yelling in the background. He stated that he then turned and observed Mr. Busch swinging a hammer over his head, running up the stairs. He then stated that as Mr. Busch ran by him, swinging the hammer and screaming incoherently, he unsuccessfully attempted to grab Mr. Busch. P.O. Sanabria then stated that Mr. Busch turned towards the officers and that he ordered Mr. Busch to drop the hammer. He stated that Mr. Busch then charged in the direction of Sgt. O'Brien and himself, all the time swinging the hammer. He further stated that when Mr. Busch was approximately four (4) feet away from him, fearing that his own life and the lives of the other MOS were in danger, he discharged one (1) round from his firearm at Mr. Busch. P.O. Sanabria stated that he had his mace and nightstick with him, but that he did not have the opportunity to use either of them due to the incident happening so fast.

Police Officer Loschiavo was interviewed under the provisions of PG 206-13. He was represented by John Tynan, PBA Attorney. P.O. Loschiavo, in essence stated that he, along with Sgt. Memoly, responded to sector GK's request for assistance with an EDP with a hammer. He stated that when he arrived, he observed P.O. Sanabria attempting to subdue a M/B, later identified as Percy Freeman. P.O. Loschiavo stated that he and Sgt. Memoly got out of the car and went to aid P.O. Sanabria. He next stated that he then heard yelling and screaming and that when he turned to see where it was coming from, he observed Gary Busch run from the stairs into the driveway. He stated that Mr. Busch stood in the driveway yelling and swinging the hammer over his head. P.O. Loschiavo then stated that he ordered Mr. Busch to "drop the hammer". He further stated that Mr. Busch did not comply with the order and instead, while swinging the hammer over his head, lunged in the direction of Sgt. O'Brien. P.O. Loschiavo next stated that when Mr. Busch's lunge brought him approximately five (5) feet from Sgt. O'Brien, P.O. Loschiavo discharged his firearm from a distance of approximately five (5) feet. He stated that he discharged his firearm at Mr. Busch to prevent Sgt. O'Brien and the other MOS from getting struck with the hammer. P.O. Loschiavo also stated that he did have his mace on his gun belt, but he did not use it because he believed the only thing that was appropriate that he could stop Mr. Busch with was his firearm.

5.   Conclusion:

Sergeant O'Brien discharged six (6) rounds # 1-6.

Firearms discharge # 1-6:   WITHIN DEPARTMENT GUIDELINES

Sergeant O'Brien was requested by 66 sector GK to respond to a 10-54 EDP possessing a hammer. When Sergeant O'Brien arrived on the scene, he attempted to subdue an individual, Percy Freeman, who had placed himself between the police officers and the individual holding the hammer, Gary Busch. While attempting to remove Mr.

Freeman on the stairway leading down to the apartment, Mr. Busch began striking Sgt. O'Brien about the body with a hammer. Sgt. O'Brien and the other officers present then proceeded up the stairs in order to get away from Mr. Busch. Mr. Busch followed the officers up the stairs and into the driveway of the location. Mr. Busch then continued to scream incoherently as he waved the hammer over his head. Mr. Busch was given numerous commands by the officers to drop the hammer, but instead charged at Sgt. O'Brien and was about to strike Sgt. O'Brien in the head with the hammer. Fearing that deadly physical force was about to be used against him, Sgt. O'Brien discharged his firearm, at Mr. Busch, six (6) times from a distance of approximately 2-4 feet.

Sergeant Memoly discharged three (3) rounds # 7-9.

Firearms discharge # 7-9:   WITHIN DEPARTMENT GUIDELINES

   Sergeant Memoly was the second supervisor to respond to the scene of sector GK's request for a patrol supervisor. When Sgt. Memoly arrived on the scene he observed Sgt. O'Brien attempting to subdue Percy Freeman and immediately went to Sgt. O'Brien's aid. Sgt. Memoly was soon made aware, by P.O. Gravitch, that Gary Busch was armed with a hammer and was coming at the officers who were attempting to remove Mr. Freeman. Sgt. Memoly instructed P.O. Gravitch to mace Mr. Busch. The mace had no apparent effect on Mr. Busch and the officers then attempted to move away from Mr. Busch. During the course of this action, Sgt. O'Brien was struck numerous times about the body, with the hammer, by Mr. Busch. With Mr. Busch in pursuit, the officers retreated to the driveway area. Once there, Mr. Busch continued to yell incoherently and then, swinging the hammer over his head, charged at Sgt. O'Brien. Fearing that Sgt. O'Brien was in imminent danger of deadly physical force, Sgt. Memoly discharged his firearm three (3) times, at Mr. Busch, from a distance of approximately seven (7) feet.

Police Officer Sanabria discharged one (1) round # 10.

Firearms discharge # 10:   WITHIN DEPARTMENT GUIDELINES

   Police Officer Sananbria received a radio run of 10-54 EDP with a hammer. Upon arrival, P.O. Sanabria and his partner, P.O. Gravitch observed Mr. Busch acting irrational and banging a hammer against a door frame. P.O. Gravitch immediately requested the response of the patrol supervisor and ESU. While waiting the response of the patrol supervisor and ESU, the officers isolated and contained Mr. Busch. Upon Sgt. O'Brien's arrival and under the direction of the same, the officers attempted to remove an individual who had attempted to place himself between the officers and Mr. Busch, Percy Freeman. Mr. Freeman's actions prompted Mr. Busch to charge at the officers while swinging the hammer. In the process, Sgt. O'Brien was struck several times by Mr. Busch, with the hammer, about the body. The officers proceeded up the stairs to distance themselves from Mr. Busch. Mr. Busch pursued the officers into the driveway in front of the location. P.O. Sanabria verbally instructed Mr. Busch to drop the hammer. Mr.

Busch, while yelling incoherently, charged at P.O. Sanabria and Sgt. O'Brien, and was about to strike the officers with the hammer. P.O. Sanabria, who already had withdrawn his firearm, discharged one (1) round at Mr. Busch from a distance of approximately four (4) feet.

Police Officer Loschiavo discharged three (3) rounds # 11-13.

Firearms discharge # 11-13:  WITHIN DEPARTMENT GUIDELINES

Police Officer Loschiavo was assigned as Sergeant Memoly's operator when he responded to the scene of sector GK's request for a patrol supervisor. When P.O. Loschiavo arrived on the scene he observed P.O. Sanabria attempting to remove Percy Freeman and immediately went to the officer's aid. While the officers were attempting to remove Mr. Freeman, Gary Busch ran up the stairs towards the officers while swinging a hammer over his head. With Mr. Busch in pursuit, the officers retreated to the driveway area. Once there, Mr. Busch continued to yell incoherently and then, swinging the hammer over his head, lunged at Sgt. O'Brien. Fearing that Sgt. O'Brien was in imminent danger of having deadly physical force used against him, P.O. Loschiavo discharged his firearm three (3) times, at Mr. Busch, from a distance of approximately seven (5) feet.

Other Recommendation

Upon completion of this investigation, it was determined that the Patrol Supervisor's vehicles that responded to this assignment were not fully equipped with the appropriate items, as outlined in Patrol Guide 219-01. However, due to the sudden and rapid escalation of this incident, it is uncertain as to whether it would have been altered by the presence of those items. It is recommended that the Commanding Officer, 66 Precinct ensure that all the command's vehicles are appropriately equipped.

6.            For your information.

DeLayne D. Hurley
Captain

**DISTIBUTION**

Chief of Department (FDRB)
Chief of Department
Chief of Patrol
C.O. Medical Division
C.O. Firearms and Tactics Section
C.O. 66 Pct.
C.O. BSIU
66 Pct. File

P000571
NYC005682